64920. IN THE INTEREST OF J. T. C. et al.

BIRDSONG, Judge.

Termination of parental rights. This case involves the father and mother of a three-year-old girl and an infant boy. The transcript consisting of over 200 pages deals almost exclusively with the bizarre activities of the mother who admittedly is schizophrenic and has been a patient at Central State Hospital at least nine times within the last four or five years. The psychological profile of the mother is that she must regularly take her prescribed medication or she rapidly deteriorates into a paranoid state with potentially dangerous ramifications to the two children. Historically, the mother refuses to admit her mental condition or the necessity to take her medicine. The prognosis of the mental condition is that the mother will have fewer lucid intervals, of shorter duration, and even the ingestion of her medication will have less and less beneficial effect. When the mother

is not taking her medicine, she becomes less capable of caring for the two children, and the children suffer nutritionally and hygienically. In substance the above predicates the termination of the mother's parental rights. The mother has not appealed the order of termination by the trial court.

The evidence further shows that the father suffered a head injury several years before the termination proceedings. As a result he has a limp and cannot move rapidly. Thus when the mother has physical control of the infant, she can effectively elude the father and the father cannot take the child from the mother as a protective measure. When acting under paranoia, the mother refuses to allow anyone, including the father, to care for the infant boy. It is apparent that the father cannot persuade the mother to take her medication at the prescribed time or in proper dosage. Also evidence was offered that on one occasion a case worker requested the father to purchase some baby bottles and a can opener so the mother could prepare formula and put it in bottles. (The mother was using a butcher knife to open the cans of milk.) The evidence relied upon by the Department of Human Resources showed that the father was asked to purchase the bottles at 10:00 a.m., and at 3:00 p.m., the father had not made the purchase because he was working on a truck. The father testified that he had no transportation and needed to get the truck repaired to get the bottles. He left to purchase the items at about 3:00 p.m. After the case worker waited 45 minutes and the father had not returned, the case worker left. The father testified that he did buy the baby's supplies and came back as soon as he could purchase the items. There was evidence that the father was away from home on the weekend prior to and again on the day the baby was born without providing care for his expectant spouse. The evidence showed that the mother had not been in labor previous to the father's absence and had shown apparent ability to care for the three-year-old girl. While the father was absent on the first occasion, a member of his family died. The father returned home and then later went back for the funeral. The wife had a phone number where the father could be reached. However, when labor commenced the mother did not contact the father but gave birth at home, cut the umbilical cord herself and then took the new born infant, herself and the three-year-old child to the hospital. She did not mention the father nor request his presence to the hospital personnel. The father came home on the day of the birth and immediately went to the hospital. Lastly, the father indicated that he could care for the two children, both physically and financially. The state did not refute this except to point out that the father could not adequately care for the children while the mother was in the home.

Based upon these facts the trial court terminated the parental rights of both parents. The father brings this appeal complaining essentially that his rights have been terminated upon the basis of the mother's delinquencies and activities. *Held:*

We agree and reverse. "There can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring. To terminate that right is to sever that right for the future as effectively in law as if it never had existed. It is a tearing of the flesh and it can be done by the court only under the most carefully controlled and regulated circumstances for the sake of the child. There must be compelling facts to establish the necessary lack of 'proper parental care or control' justifying the government's intrusion in cutting natural family ties." *Nix v. Dept. of Human Resources,* 236 Ga. 794, 795 (225 SE2d 306). Thus termination of parental rights must be based upon a balancing of the state's interest in the welfare of the child as impacted by the degree of forfeiture of that preeminent right of the natural parent to the custody and services of his child caused by intentional or constructively intentional misconduct leading to abuse or neglect of the child, or what is tantamount to physical or mental incapability to care for the child. *Chancey v. Dept. of Human Resources,* 156 Ga. App. 338 (274 SE2d 728).

A fair reading of this record and transcript reflects the great majority of the evidence at the hearing clearly portrayed the mother's mental unfitness and inability to care for the children on a day-to-day basis. While her condition and the nature of her child care while sick certainly support a finding that the children were neglected and deprived, we are unable to find any credible evidence that the father was unable to care for the children when the mother properly took her medicine or when she was hospitalized and out of the home; that he personally engaged in any misconduct, or had in any way abandoned the children or caused the children's state of neglect or deprivation. We can find no credible evidence that the father suffers a lack of parenting skills, demonstrates anything other than love for the children, or lacks a home and financial ability to care for them. There was no evidence that because of advanced age or physical disability the father was unable to care for his natural children. As we view this state of the evidence we conclude ". . . it does not show any of the profoundly detrimental and egregious parental conduct which led to termination . . . in previous cases. . . . The appellant's conduct has not been exemplary, but neither has it been so extraordinary that the state should intervene and take [his] child away from [him] permanently." *R. C. N. v. State of Ga.,* 141 Ga. App. 490, 492 (233 SE2d 866). Of course should the father persist in maintaining the

children in the home under the custody and care of the mother after her rights have been terminated and thereby subject them to further or renewed potentially dangerous mismanagement or abuse or neglect, his purposefully selected choice of conduct would raise serious question to his own parental love and fitness. However, as the case now stands and on the basis of the evidence in this record, we find there was no evidence to warrant the trial court's finding the existence of continued deprivation attributable to the father such that appellant's rights in his children should permanently be terminated. *Griffin v. Walker County Dept. of Family &c. Services,* 159 Ga. App. 63 (282 SE2d 705).

*Judgment reversed. McMurray, P. J., and Banke, J., concur.*

DECIDED NOVEMBER 30, 1982.

*Russell M. Boston,* for appellants.

*Willis B. Sparks III,* District Attorney, *Vivian D. Egan,* Assistant Attorney General, *William F. Ladson, Jr.,* for appellee.