176 Ga. App. 30 (1985)
335 S.E.2d 148
IN RE D. C. & J. T. C.
70543.
Court of Appeals of Georgia.
Decided September 13, 1985.
Jane A. Stevens, for appellant.
Willis B. Sparks III, District Attorney, Thomas J. Matthews, Assistant District Attorney, William F. Ladson, Jr., for appellee.
SOGNIER, Judge.
Appellant, the father of D. C. and J. T. C., appeals from the order of the Juvenile Court of Bibb County terminating his parental rights in the two children. This court reversed an earlier order terminating appellant's parental rights on the basis that the majority of the evidence adduced before the trial court, while amply portraying the mother's mental unfitness and inability to care for the children, did not meet the requisite standard of evidence as to appellant to justify permanently terminating his rights in the children. In the Interest of J. T. C., 164 Ga. App. 565 (298 SE2d 287) (1982). Nine months after the trial court remanded the two children to appellant's custody, the Department of Human Resources brought the instant petition to terminate appellant's parental rights pursuant to OCGA § 15-11-51.
OCGA § 15-11-51 provides in pertinent part: "(a) The court by order may terminate the parental rights of a parent with respect to his child if: . . . (2) The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." "This court has long recognized that termination of parental rights is a severe measure. [Cits.] `There is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. When we do this, we make a decision on human frailties and their consequences. It becomes *31 an agonizing undertaking.' McCormick v. Dept. of Human Resources, 161 Ga. App. 163, 164 (288 SE2d 120) (1982). Accordingly, '[c]ompelling facts are required to terminate parental rights. [Cits.]'" Health v. McGuire, 167 Ga. App. 489, 491 (306 SE2d 741) (1983).
The evidence adduced at the hearing revealed that the children's mother, upon release from the state mental institution where she was a patient, had returned to live with appellant and the two children. Appellant's sister testified that on a number of occasions she had visited appellant's residence to find appellant gone and the mother alone with the children. Appellant testified that he never left the children alone with the mother, explaining that on those occasions he was in the backyard or working on automobiles at the time. However, the witness testified that she was told by the mother that appellant was out or had gone shopping at those times; the witness noticed that appellant's car was gone from the driveway; and the witness testified that if appellant had been working on a car she would have gone around to talk with him.
The witness further testified that during her visits the mother's "nerves" were bad, that the mother would say violent things and did not appear to know what she was saying or doing. The children were observed being mistreated by the mother during these visits, the witness testifying as an example that she saw the mother sling D. C. around "like she was a little toy."
In our earlier opinion, we stated, "[o]f course should the father [appellant] persist in maintaining the children in the home under the custody and care of the mother after her rights have been terminated and thereby subject them to further or renewed potentially dangerous mismanagement or abuse or neglect, his purposefully selected choice of conduct would raise serious question to his own parental love and fitness." In the Interest of J. T. C., supra at 567-568. Appellant was fully aware that the mother's rights in the children had been terminated due to her mental instability and despite this, appellant repeatedly chose to leave the children with their mother while he absented himself  whether to the backyard or to the grocery store  effectively placing the mother in unsupervised control over the children. Although there was repeated testimony that appellant was afraid to leave the children with the mother, it is clear from appellant's testimony that his apprehension was not based on any recognition of the danger posed by the mother's unsupervised control over the children but instead stemmed from his realization that to so leave the children with the mother might result in the children being taken from his custody. Appellant's statement that he considered the mother's failure to murder the younger child at birth as she had threatened to do as proof she would not hurt the children now demonstrates appellant's inability to recognize the mother's unfitness.
*32 In addition to the evidence showing that appellant left the children in the unsupervised care of their mentally unstable mother, other evidence was presented that appellant himself was unfit to be the primary custodian of the children. This evidence centered on an episode where appellant allowed J. T. C. (then two years and two months old) to get into the bathtub with D. C. (then five years and three months old) and then left the two children alone in the bathroom for over 10 minutes while appellant went into another room to watch television. Appellant testified that D. C. had to call him three times to tell him that J. T. C. would not raise his head above the water before appellant went to the bathroom to find J. T. C. under the water in an unconscious state. Appellant managed to revive the child and after a period of hospitalization J. T. C. was released with no apparent permanent damage.
The trial court's order contained detailed findings which supported the conclusions necessary to justify the termination of appellant's parental rights. Those findings were supported by clear and convincing evidence. See In re J. L. W., 170 Ga. App. 886 (318 SE2d 751) (1984). "When the trial court makes a finding of parental unfitness, the appellate courts will ordinarily not interfere with that finding, absent abuse of discretion. [Cit.]" In re M. M. A., 166 Ga. App. 620, 625 (1) (305 SE2d 139) (1983). No such abuse of discretion has been shown in the instant case. See generally In re J. L. W., supra.
Judgment affirmed. Birdsong, P. J., and Carley, J., concur.