A99A0360. IN THE INTEREST OF D. E. K., a child.
(512 SE2d 690)

ELDRIDGE, Judge.

The mother of D. E. K. appeals from the entry of a temporary placement order of the juvenile court finding that D. E. K. was deprived and awarding temporary custody to the Pierce County Department of Family & Children Services ("DFCS"). Following an adjudicatory hearing, the juvenile court judge entered an order finding that clear and convincing evidence existed to find D. E. K. deprived based upon the following facts: (1) between April 8, 1998, when the child was placed in an emergency shelter, and July 13, 1998, the date of the adjudicatory hearing, the appellant had experienced at least six changes of address; (2) on September 10, 1997, at approximately 11:00 p.m., a law enforcement officer observed the appellant in a motel room, there was a strong odor of marijuana in

the room, the appellant's pupils were dilated, and, in the opinion of the officer, the appellant was under the influence of marijuana; (3) on the same evening, the appellant had left D. E. K. asleep in the appellant's automobile, which was parked outside the motel room, with no one to watch or guard the vehicle; (4) the appellant was eighteen years of age at the time of the hearing; (5) the father of D. E. K. had abused the appellant on at least three different occasions; (6) during the last episode of abuse, the father of D. E. K. was arrested, and prior to the arrival of police officers, the appellant took the child to the barn and hid to avoid the father; (7) the appellant testified that she planned to divorce the father, but since D. E. K. was placed in shelter care, the appellant had obtained employment with a construction company that employed the father and was seen in Waycross accompanying the father to a local motel; (8) the appellant testified that, at the time of the adjudicatory hearing, she resided in a two-bedroom mobile home in West Green, Coffee County, and she admitted that she and the father had previously lived in the same area; and (9) the appellant was still wearing the wedding rings which she admitted were symbolic of her marriage to the father. The appellant, in her sole enumeration of error, contends the evidence was insufficient for the juvenile court to find D. E. K. was deprived. We agree.

The evidence at the deprivation hearing showed the following: about six days after D. E. K.'s birth on September 9, 1996, DFCS received a "report of problems in the home." However, prior to DFCS making an investigation, D. E. K.'s parents moved to Pennsylvania. At some point, D. E. K.'s parents moved back to Georgia. On September 10, 1997, at approximately 11:00 p.m., Don Kicklighter, a sergeant with the Wayne County Sheriff's Department, went to the Jesup Motel, where D. E. K.'s father lived, to check on the welfare of the appellant pursuant to a call from D. E. K.'s paternal grandfather. When D. E. K.'s father opened the door, Sergeant Kicklighter smelled marijuana in the room. The father's eyes were glassy, and his pupils were dilated. Sergeant Kicklighter suspected the father had been smoking marijuana. The father consented to be searched. The sheriff found marijuana in the father's pocket and arrested him for possession of marijuana.

The father told the sheriff that the appellant was in room 120, which was the room next door. When the appellant opened the door, Sergeant Kicklighter testified he also smelled marijuana in room 120. Sergeant Kicklighter further testified that the appellant's eyes were glassy and red, her pupils were dilated, and she was extremely nervous and scared. The appellant admitted that she had smoked marijuana earlier that day, but she denied smoking marijuana immediately prior to the sheriff's arrival. Sergeant Kicklighter did

not find any drugs on the appellant or in her room. When the appellant indicated she was not planning to spend the night at the motel, Sergeant Kicklighter administered a horizontal gaze nystagmus test to the appellant, which she failed. Sergeant Kicklighter instructed the appellant that she should not drive and offered to transport her to the sheriff's office where she could call someone to pick her up. The appellant then told Sergeant Kicklighter that one-year-old D. E. K. was in her car in the parking lot.

When Sergeant Kicklighter went with the appellant to her car, D. E. K. was asleep and strapped in his car seat. Sergeant Kicklighter testified that it was a cool September night and the baby had on only a shirt and a diaper. However, the baby did not appear to be in any distress, he was not "shaking or shivering," his lips were not blue, and he did not appear to be injured in any way. In fact, the baby appeared to be clean and healthy. At trial, the appellant testified that she had just gotten back from buying food at McDonald's and had left the baby, who was asleep, in the car only minutes while she took the food inside.

On April 7, 1998, the appellant, D. E. K., and the child's father were at a friend's house. The father and his friend were drinking alcohol and began fighting. During the fight, D. E. K.'s father grabbed the appellant's foot and twisted her knee. The appellant testified that she took D. E. K. to a barn and hid. The police were summoned, and D. E. K.'s father was arrested.

On April 8, 1998, the appellant was arrested for deposit account fraud, and D. E. K. was placed in emergency shelter care. The appellant was released from custody on the day of her arrest, and, shortly thereafter, D. E. K. was placed with the appellant's mother, where the appellant also was living. After about a month, the appellant's mother began drinking, and the appellant, with DFCS approval, took D. E. K. and went to her sister's house. The following day, D. E. K. was placed with a foster family. However, D. E. K. was allowed to visit with his mother the next day and spend the night.

The morning after D. E. K.'s visit, the appellant started a new job at Henry Construction, which was located in Waycross, and moved in with a friend who lived nearby. The appellant stayed with her friend about a week until she could save enough money to move into her own apartment. Before the appellant could save enough money to have the utilities turned on in her apartment, she discovered that the roof leaked. She moved out of the apartment and moved to West Green. At the time of the hearing, she was living by herself in a mobile home with the utilities on, had a job at McDonald's, and had arranged for a neighbor to care for D. E. K. while she was at work.

At the hearing, the appellant admitted that the child's father had abused her on three separate occasions during the previous

three years. The appellant testified that, after each abusive episode, she left D. E. K.'s father. However, the child's father would promise to stop drinking, and the appellant would reconcile with him because she wanted her son to grow up with both a mother and a father. The appellant testified that, after the April 7, 1998 incident, she called the sheriff's department to see if they could help her get placed in an abused women's shelter.

The appellant testified that, while the father had abused her, D. E. K. had never been abused in any way by his father. The appellant further testified that she now realized that the father was not going to change and, as soon as she saved enough money to obtain a lawyer, she planned to file for divorce. The appellant testified that she had not lived with D. E. K.'s father since D. E. K. was placed in foster care. Even though the appellant's youngest sister testified that she had seen the appellant and the father together as they left work at Henry Construction one evening and had given them a ride to a local motel, the appellant testified that she and the father were together because they were talking about D. E. K., that she had not spent the night with him at the motel, and she had not seen D. E. K.'s father since she stopped working at Henry Construction.

Both of the appellant's sisters testified that the appellant took good care of D. E. K.; that she fed and clothed D. E. K.; and that she had never harmed or injured D. E. K. Tony Cason, D. E. K.'s current caseworker, testified that the appellant was protective of D. E. K. and that, while D. E. K. was in the appellant's custody, the child had never been harmed and always appeared to be well fed, well clothed, healthy, and attentive.

"The definition of a deprived child, as contained in OCGA § 15-11-2 (8), focuses upon the needs of the child *regardless of parental fault*. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Citations, punctuation and footnote omitted; emphasis in original.) *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997); see *In re R. R. M. R.*, 169 Ga. App. 373, 374 (312 SE2d 832) (1983). "It is well established that clear and convincing evidence is required to support a finding of deprivation. OCGA § 15-11-33 (b) (1); *In re Suggs*, 249 Ga. 365 (291 SE2d 233) (1982); *In re R. R. M. R.*, [supra]." *In the Interest of E. R. D.*, 172 Ga. App. 590 (323 SE2d 723) (1984).

Under the facts of this case, a deprived child is defined as a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health or morals." OCGA § 15-11-2 (8) (A). The evidence is uncontroverted that the appellant has taken care of D. E. K. to the best of her ability. D. E. K.'s basic physical, mental,

and emotional needs have been met by the appellant. While this Court does not condone the appellant's transitory lifestyle, her previous drug use, her relationship with an abusive husband, and her leaving D. E. K. unsupervised in the car for even a short period of time, such conduct, alone, is not clear and convincing evidence that D. E. K. is deprived under the definition set forth in OCGA § 15-11-2 (8) (A) and that temporarily removing custody of D. E. K. from the appellant would be best for D. E. K.'s welfare.

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 19, 1999.

*Houston & Golub, Phillip N. Golub*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Michael D. DeVane*, for appellee.