591 S.E.2d 475 (2003)
264 Ga. App. 598
In the Interest of J.C. et al., children.
No. A03A2146.
Court of Appeals of Georgia.
December 8, 2003.
*476 Richard A. Jones, Canton, for appellants.
Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Dana M. Thompson & Associates, John D. Cline, for appellee.
JOHNSON, Presiding Judge.
The mother and father of the minor children J.C., T.C., and S.C. appeal from the order of the Juvenile Court of Cherokee County finding their children to be deprived. They claim that the evidence adduced at the deprivation hearing was insufficient to support the juvenile court's findings. We disagree and affirm.
In considering the mother and father's appeal from the juvenile court's deprivation order, "we review the evidence from the juvenile court hearings in the light most favorable to the court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the children were deprived."[1] So viewed, the evidence shows that the children, aged twelve, nine, and two, lived with their parents in a rented mobile home. When caseworkers for the Cherokee County Department of Family and Children Services visited the home they noticed that both the inside and outside of the home were cluttered, that the floor was very dirty, and that there was dirt and old food in the refrigerator and encrusted food on the inside of the microwave. A nail gun was under the sink, and pill bottles were within reach of the children. There was very little food in the main compartment of the refrigerator. On one visit to the home, a Department worker saw that S.C. had old food on her face and was wearing soiled clothes.
Perry Marshall, a social worker for the Cherokee County School System, visited the residence in February 2003 as part of a truancy investigation of J.C. and T.C. Although he could tell someone was home, nobody answered the door. Marshall left a note for the parents, but no one contacted him.
Marshall brought the school attendance records for T.C. and J.C. to the hearing, and the records were admitted into evidence. The records showed that T.C. had twenty unexcused absences and five excused absences during the 2002-2003 school year. During the 2001-2002 school year, T.C. was absent 32 times, 26 of which were unexcused. In the 2000-2001 school year, T.C. had nine unexcused absences and seven excused absences. During 1999-2000, T.C. had 26 unexcused absences and 21 excused absences.
For the 2002-2003 school year, J.C.'s records show she was absent 23 times, all of *477 which were excused. During the 2001-2002 school year, J.C. had twenty-four unexcused absences and two excused absences. In 2000-2001, J.C. had 13 unexcused absences from school, and in 1999-2000, J.C. had 29 unexcused absences.[2]
Both the mother and the father testified at the deprivation hearing that they had used marijuana in January or February 2003. Although the Department asked the father that he take a drug screening test shortly before the hearing, he did not do so. The mother testified that she and the father went to a counselor for a drug and alcohol assessment, but she was unable to testify as to the results of the assessment other than that she received "a list of things I could do." The mother also testified that she and the father had undergone two drug screening tests, but neither the Department nor the parents introduced the results, if any, of these tests.
The parents contend that the evidence was insufficient to support the juvenile court's findings that the children were deprived due to (1) educational neglect, (2) the parents' drug abuse, and (3) the parents' neglect in failing to have adequate food in the house. A deprived child is a child who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[3] In considering a deprivation petition, "[t]he petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue."[4] Deprivation must be shown by clear and convincing evidence.[5]
1. Educational Neglect. The record documents J.C.'s and T.C.'s high number of absences from school. The mother's explanation for the children's unexcused absences was that "[a] lot of times they would sleep late." The mother admitted that T.C. and J.C. were struggling with a few subjects. Marshall, the school social worker, testified he had received repeated truancy referrals with respect to J.C. and T.C. over the past several years, but that he had been unable to contact the parents. The children's pattern of absences continued even after the Department began its deprivation investigation. T.C. was absent from school twelve times during February and March 2003, and J.C. was absent nine times during this period.[6]
Relying on In the Interest of A.G.I.,[7] the parents argue that there is no showing that the parents' actions have harmed the children. But In the Interest of A.G.I. was an appeal from a termination of parental rights, not an appeal from a finding of deprivation, and the mother's actions considered in that case did not directly affect the child's education.[8] Under OCGA § 15-11-2(8)(A), a "deprived child" includes a child who is without "education as required by law."[9] There is no statutory requirement, and the parents do not show, that specific harm must support a finding that a child is deprived because of the child's failure to receive the education required by law.[10] Because of J.C.'s and T.C.'s high number of unexcused absences *478 from school, the extended period during which the children continued to miss school, and the parents' unwillingness to talk with the school representative about their children's truancy, we conclude that a rational trier of fact could have found by clear and convincing evidence that the children were not receiving the education required by law and were deprived for that reason.
2. Substance abuse. The parents contend that the evidence was insufficient to support the trial court's findings that the children were deprived by reason of their drug use. The parents testified that, acting independent of one another, they each tried marijuana for the first time in January or early February 2003. The trial court ruled, however, that the parents' explanation of their marijuana use was not credible. We will defer to the trial court's findings as to the credibility of witnesses.[11] Furthermore, the father refused to take a requested drug screening test.
A deprived child includes a child without proper parental care or control.[12] In determining whether a child is without proper parental care or control, the trial court may consider, among other things,
[e]xcessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child.[13]
The parents' admission of isolated drug use, considered alone, may not be clear and convincing evidence that they could not provide for the "physical, mental, emotional, or moral condition and needs" of the children.[14] But the evidence of J.C.'s and T.C.'s truancy, and the condition of the home, which Department agents testified was both dirty and hazardous to children by reason of the nail gun under the sink and the "pill bottles around," when considered along with the parents' illegal drug use, was sufficient for a rational finder of fact to conclude by clear and convincing evidence that the children were deprived because of a lack of proper parental care and control. "The legislative definition of `deprived' uses broad enough terminology to allow the juvenile court a sound discretion in reaching such a finding."[15]
3. Lack of adequate food. The trial court found that the parents had not provided adequate food in the home. A child may be deprived if he or she is without "subsistence."[16] However, we agree with the parents that there was not clear and convincing evidence to support a finding of deprivation based on the lack of adequate food in the home. During a visit to the home by a social worker, she noticed that there was not a lot of food in the refrigerator, but the mother testified that there was additional food in the cabinets and the freezers. The social worker admitted that she did not look in the drawers of the refrigerator and that there was food in the freezer and kitchen cabinets. Furthermore, there was no evidence that the children appeared underfed or undernourished. The trial court also ruled at the conclusion of the hearing that the lack of adequate food "had been rectified." Based on other evidence, however, we must affirm the order of the juvenile court finding J.C., T.C., and S.C. to be deprived.
Judgment affirmed.
ELDRIDGE and MIKELL, JJ., concur.
NOTES
[1] In the Interest of J.P., 253 Ga.App. 732, 560 S.E.2d 318 (2002).
[2] This recitation omits the records of T.C.'s and J.C.'s numerous tardies.
[3] OCGA § 15-11-2(8)(A).
[4] (Citation and punctuation omitted.) In the Interest of J.P., 267 Ga. 492, 480 S.E.2d 8 (1997).
[5] In the Interest of C.C., 249 Ga.App. 101, 103, 547 S.E.2d 738 (2001).
[6] J.C.'s absences during this period were excused; T.C.'s absences were not excused.
[7] 246 Ga.App. 85, 539 S.E.2d 584 (2000).
[8] Id. at 88(2)(d), 539 S.E.2d 584.
[9] OCGA § 20-2-690.1(a) provides

[e]very parent, guardian, or other person residing within this state having control or charge of any child or children between their sixth and sixteenth birthdays shall enroll and send such child or children to a public school, a private school, or a home study program that meets the requirements for a public school, a private school, or a home study program.
[10] See generally In re D.H., 178 Ga.App. 119, 125, 342 S.E.2d 367 (1986) (upholding that part of the lower court's deprivation order requiring children to attend school); In the Interest of C.N., 231 Ga.App. 639, 640(1), 500 S.E.2d 400 (1998) (part of evidence showing child was deprived was that child missed 16 of 48 days of school and mother was unable to compel child to attend school).
[11] See In the Interest of C.S., 236 Ga.App. 312, 314(1), 511 S.E.2d 895 (1999).
[12] OCGA § 15-11-2(8)(A).
[13] OCGA § 15-11-94(b)(4)(B)(ii).
[14] See, e.g., In the Interest of D.E.K., 236 Ga. App. 574, 512 S.E.2d 690 (1999) (mother's previous drug use and other behavior, while not condoned, were insufficient to show child was deprived).
[15] In the Interest of S.S., 232 Ga.App. 287, 290(2), 501 S.E.2d 618 (1998).
[16] OCGA § 15-11-2(8)(A).