A04A1599. IN THE INTEREST OF D. C. et al., children.

(602 SE2d 885)

ELDRIDGE, Judge.

On January 20, 2004, the Pickens County Department of Family and Children Services ("DFCS") filed a deprivation petition under OCGA § 15-11-2 (8) (A) in the Juvenile Court of Pickens County against Jason Crowe, the legal father of D. C., age six, Darrell Padgett, the putative father of D. P. and D. P.,[1] ages five and three respectively, and Tonya White, the children's legal mother, for "domestic violence, inappropriate supervision, and substance abuse." Following an adjudicatory hearing, the juvenile court found the children deprived and placed temporary legal custody of D. C. in DFCS.[2] Upon the consent of the parties and subject to stipulated conditions,[3] the juvenile court placed D. P. and D. P. in the temporary legal custody of Padgett. The mother appeals from the order finding the children deprived. She contends that the juvenile court erred by finding D. C. deprived upon preliminary findings that she lacked a stable home and had neither financial nor employment stability, such preliminary findings as not alleged; that the foregoing findings of the juvenile court as well as the finding that issues of domestic violence existed were unsupported by the evidence; and that the findings of the juvenile court were not in conformity with its rulings at trial. In

---

[1] By the order complained of, the juvenile court granted, without objection, Padgett's consent petition to legitimate D. P. and D. P.

[2] D. C.'s father stipulated that he was unable to provide for the child's needs for mental health issues, inability to provide stable transportation, employment, or housing, and an unresolved substance abuse problem.

[3] The juvenile court placed custody of D. P. and D. P. in Padgett, provided he "comply with a Safety Plan produced by [DFCS] that shall include random drug screens and that he will cooperate with [DFCS] in not providing an opportunity for visitation between the mother and the children except through times and places approved by [DFCS]."

a second claim of error, the mother contends that the juvenile court erred in finding D. C. deprived for want of clear and convincing evidence that the acts complained of negatively impacted the child. We disagree and affirm.

In Georgia, a child is deprived in circumstances leaving the child without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals. OCGA § 15-11-2 (8) (A).

> It has been held that to authorize a termination of parental rights, or even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapacity to care for the child. [Cits.]

*In re D. H.*, 178 Ga. App. 119, 124 (342 SE2d 367) (1986). As a matter which lies within the sound discretion of the factfinder, a juvenile court's deprivation finding will not be disturbed on appeal absent an abuse of discretion. *In re D. C. & J. T. C.*, 176 Ga. App. 30, 32 (335 SE2d 148) (1985); see also *In the Interest of A. L. B.*, 245 Ga. App. 776, 777 (538 SE2d 557) (2000) ("[W]e are required to view the evidence in the light most favorable to the juvenile court's order in determining whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights had been lost. Ours is not to weigh the evidence but to defer to the trial judge as the factfinder. [Cits.]").

So viewing the evidence, the record reflects that on November 21, 2003, the police were called to D. C.'s home upon a report of domestic violence. On cross-examination at the adjudicatory hearing, the mother characterized the event as a "big disturbance" in which she had become loud in that the father had "trashed" the couple's residence while "irrational" on drugs. DFCS opened its investigation of the family five days later upon a complaint that D. C. was home alone after getting off the bus from school. When case manager Rebecca Smith arrived at the parents' residence, D. C. explained that he "waits for Mom" after school. The mother thereafter tested positive for marijuana and signed a safety plan in which she "agree[d] to refrain from drug use, to provide adequate adult supervision for her children at all times and to provide healthy food, at least a week's worth at all times." At school, D. C. later told school counselor, Jenny Hutto, that getting off the bus with no one at home left him scared.

In the three months before the hearing, the mother failed to comply with the safety plan she had signed. On December 2, 2003, D. C. again arrived home from school to find no one to care for him, on this occasion taken in because of the cold by the manager of the apartment complex who observed him trying to get into his locked apartment. The mother applied for food stamps on January 6, 2004, testifying at the adjudicatory hearing that "[i]t was getting to where I had no food." In this regard, case manager Smith testified that she found only a half a package of Oreo cookies, a carton of ice cream, and one packet of oatmeal in the home upon inspecting it on January 14, 2004. Smith had come to the residence on that date upon a complaint that the mother had left the children without a babysitter for two days. Only the father, just released from a drug rehabilitation program for an addiction to methamphetamines and barred from seeing the children alone by the mother since the November 21 domestic disturbance, was present. He explained that the mother "was supposed to be at work"; DFCS, however, was unable to confirm this status, the mother's Citgo employer indicating that she had not come to work due to an accident as to which DFCS later could find no record. On this, DFCS took the children into custody. At school, school counselor Hutto noted a significant improvement in D. C., describing him as going from nonresponsive and possibly autistic to a "completely different child" and a normal kindergartner in every respect.

Otherwise, it is undisputed in the record that the mother had marijuana in her system on the date of the hearing, having failed a random drug test only three days before; that she had failed each of six random drug tests which DFCS administered to her under the safety plan, consistently testing positive for marijuana and, on one occasion, positive for Xanax as well as marijuana. Further, while the mother held three jobs in the three months before her hearing, she was terminated from the first for personal problems; was fired after a day in the second job; and had been employed as a Taco Bell server in the third for only the two days before her hearing began, a Saturday and a Sunday. And, although the mother testified at the juvenile court's hearing that she had arranged for adequate housing within two weeks time, she did not have suitable housing at the time of her hearing, sleeping on a couch after moving in with a former boyfriend and his roommate following notice of eviction for nonpayment of rent at her apartment. Likewise, while the mother testified that she would try to free herself from drugs in DFCS-mandated drug and alcohol counseling, such counseling had not begun at the time of the hearing. *Held*:

1. The mother's contention to the contrary notwithstanding, the juvenile court did not err in finding D. C. to be deprived for want of a stable residence, financial instability, and no stable employment in

the mother. While such matters were not expressly averred as the mother points out, DFCS nonetheless filed its deprivation petition under OCGA § 15-11-2 (8), alleging "inappropriate supervision," the mother's safety plan having required the mother, among other things, "to provide adequate adult supervision for her children at all times."

A deprived child is one who "[i]s without proper ... care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (8) (A). Under notice pleading procedure of the Civil Practice Act, not more than a short and plain statement of the claim giving the defendant reasonable notice thereof is required. *Allen v. Bergman*, 201 Ga. App. 781, 783 (3) (b) (412 SE2d 549) (1991); *Bazemore v. Burnet*, 117 Ga. App. 849, 852 (161 SE2d 924) (1968). Where, as here, the reasonable import of the word "supervision" clearly extended to a duty of care for D. C. in the mother as well as one of control, the mother cannot assert a lack of notice of matters relevant to her ability to provide such care to avoid preliminary findings appropriate to reaching a conclusion of law as to deprivation. Moreover, the mother chose not to object on this basis in the juvenile court. "Where there is nothing in the record to support a contention of error, there is nothing to review. (Cits.)" (Punctuation omitted.) *White v. Plumbing Distrib.*, 262 Ga. App. 228, 231 (3) (585 SE2d 135) (2003). Each of the juvenile court's findings as supported by clear and convincing evidence and all in substantial conformity with the ruling of the juvenile court at trial, the mother's remaining arguments in support of the instant claim of error are without merit.

2. Neither is there any merit in the mother's claim that the juvenile court erred in finding D. C. deprived for no clear and convincing evidence that the acts complained of negatively impacted the child. The mother correctly argues that a deprivation petition brought under OCGA § 15-11-2 (8) (A) "focuses upon the needs of the child regardless of parental fault. . . . The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Citation, punctuation and emphasis omitted.) *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997); *In the Interest of D. E. K.*, 236 Ga. App. 574, 577 (512 SE2d 690) (1999). However, the mother's fitness to parent is nonetheless in issue. OCGA § 15-11-2 (8) (A); *In re D. H.*, supra. Pertinently, it is undisputed in the evidence that being left at home alone had frightened D. C.; that D. C. markedly improved in school after his removal from the home; and that the mother was in complete noncompliance with the safety plan that she had signed. We find that there was sufficient clear and convincing evidence for a rational trier of fact to find that D. C. was deprived for the mother's parental inability or misconduct. Id.; *In re D. C. & J. T. C.*, supra, and

that temporarily removing D. C. from the mother's custody was in his best interest. *In the Interest of J. P.*, supra. We join the juvenile court in expressing our hope that "if [the mother] gets on the right track she can get her children back in a reasonably quick fashion."

*Judgment affirmed. Adams, J., concurs. Ruffin, P. J., concurs in judgment only.*

DECIDED AUGUST 3, 2004.

*James T. Johnson*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Shalen S. Nelson, Senior Assistant Attorneys General, Dana M. Thompson, Lee W. Fitzpatrick*, for appellee.