671 S.E.2d 303 (2008)
In the Interest of B.H., a child.
No. A08A1102.
Court of Appeals of Georgia.
Reconsideration Denied December 16, 2008.
November 17, 2008.
*305 Kris-Ann Stanley, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Bruce & Highsmith, Gerald W. Bruce, Cleveland, for appellee.
RUFFIN, Presiding Judge.
The Union County Department of Family and Children Services (the "Department") filed a deprivation petition seeking temporary custody of then nine-year-old B.H. Following a hearing, the trial court found that B.H. was deprived because the child was sexually abused by the father and because the mother failed to protect the child. The father and mother appeal. We affirm.
1. The father and mother contend that the evidence was insufficient to show that B.H. was deprived as to the father. We disagree.
A deprived child is one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[1] "On appeal from a determination that a child is deprived, we review the evidence in [a] light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived."[2] Further,
[t]o authorize even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.[3]
So viewed, the record shows that B.H. was the adopted child of the father and mother. From July through November of 2006, then 11-year-old M.G., a foster child, lived in the home with B.H. and the parents. M.G. also visited the home from time to time thereafter. M.G. testified that the father touched her "privates," sometimes with his toys, sometimes with his hand, and sometimes with his tongue. The father would use the toys, which vibrated, on the outside of her private area. According to M.G., B.H. was in the bedroom "more than once" with M.G. and the father when the incidents happened. M.G. saw the father touch, lick, and use toys on B.H.'s private area on more than one occasion. B.H. did not testify at the hearing, but she underwent a forensic interview and a forensic evaluation during which she did not disclose any incidents of abuse.
The father argues that there was no clear and convincing evidence that he molested either M.G. or B.H. because M.G. was not credible and because B.H. denied being molested. However, the trial court found M.G. to be a credible witness, and "it is the role of the factfinder, not the appellate courts, to judge the credibility of a witness or the lack *306 thereof."[4] It follows that any rational trier of fact could have found by clear and convincing evidence that B.H. was deprived as to the father.[5]
2. The parents also contend that the evidence was insufficient to show that B.H. was deprived as to the mother. We disagree.
The trial court found that B.H. was deprived "due to the failure of [the mother] to protect the child." It is well established that a juvenile court is authorized to find a lack of proper parental care or control based on a parent's failure to protect his or her child from injury.[6] "A juvenile court's primary responsibility is to consider and protect the welfare of the child whose well-being is threatened."[7]
Evidence showed that after M.G. accused the father of abusing M.G. and B.H., he moved out of the home and, under the terms of a safety plan, could not be in the home when B.H. was present. The mother subsequently instructed the child to say no to everything during the child's forensic evaluation so that the father could return home. She also told the child that when the father came home he was going to bring her a kitten. In light of the foregoing, the trial court could conclude that the mother had manipulated B.H. to ensure the return of the father to the home without regard to whether he had sexually abused the child, and that this amounted to a failure to protect the child. Accordingly, any trier of fact could have found by clear and convincing evidence that B.H. was deprived as to the mother.
3. The parents claim that the trial court erred in excluding the testimony of Sherry Wendt, M.G.'s former court-appointed special advocate ("CASA"). We disagree.
The parents proffered that Wendt would testify as to statements made by M.G. Specifically, the statements concerned an allegation of sexual abuse made by M.G. that M.G. later recanted and allegations by M.G. "against her current foster father," which the parents maintained would be relevant to M.G.'s motive in accusing B.H.'s father of abusing M.G. and B.H. The trial court refused to allow Wendt to testify for the purpose of impeaching M.G.
OCGA § 15-11-9.1 defines the roles and responsibilities of a CASA. "The role of a CASA in juvenile court deprivation proceedings shall be to advocate for the best interests of the child."[8] As part of these duties, the CASA is directed to conduct an independent assessment of the facts and circumstances surrounding the case and maintain regular contact with the child.[9] "All records and information acquired, reviewed, or produced by a CASA during the course of his or her appointment shall be deemed confidential and shall not be disclosed except as ordered by the court."[10]
The legislature has not enacted an evidentiary exclusion of communications between a child and a CASA such as those contained in OCGA § 24-9-21.[11] But OCGA § 15-11-9.1 protects the relationship between the child and the CASA by (1) broadly labeling as confidential all records and information acquired by the CASA in the course of his or *307 her appointment, and (2) prohibiting disclosure of the confidential information other than by order of the court.
In light of the testimony proffered by the parents, the trial court could fairly conclude that Wendt would testify to information she acquired while acting as a court-appointed advocate for M.G. The trial court found that not only was Wendt's testimony inconsistent with the purposes of the CASA program, but that the parents had multiple witnesses to impeach M.G.that the parents had "plowed that row very well"[12]and that the absence of Wendt's testimony would not prejudice the parents' case. Under the circumstances, the trial court was entitled to conclude that Wendt's testimony was not so material to the parents' case as to outweigh the policy, as expressed in OCGA § 15-11-9.1, that a CASA's confidential information not be disclosed, and so did not abuse its discretion in excluding the testimony.[13]
4. The parents also claim that the trial court erred in denying their discovery request. We disagree.
Discovery in the juvenile court is allowed in the discretion of the judge in deprivation cases, termination cases, and in custody cases referred to the juvenile court by a superior court.[14] In their motion for discovery, the parents sought "[a] statement describing exactly how the Department alleges [the mother] has `spoken to the child in attempt to prejudice the child,'" or how the mother otherwise communicated with B.H. about the investigation of the father or the forensic investigation. The trial court denied the request, ruling that "it is improper to force the [Department] to provide specific information in the form of an interrogatory." The parents argue that the trial court's ruling shows that it abused its discretion in refusing the discovery request and that they were therefore denied access to crucial information.
Uniform Juvenile Court Rule 7.2 provides that a party may request answers to written interrogatories, and so to the extent that the demand for a statement from the Department was an interrogatory request it was not improper. But the trial court denied the discovery request "additionally" in light of its having required all existing witness statements be provided by the Department to the parents. Accordingly, we conclude that the trial court exercised its discretion to limit the scope of discovery,[15] and we cannot conclude that the trial court abused that discretion, particularly in light of the parents' failure to address what was contained in the witness statements ordered to be produced.[16]
5. The parents contend that the trial court erred in requiring the father to view M.G.'s courtroom testimony from a television monitor in a separate room. We disagree.
We have previously recognized that parents' right to due process in termination cases includes the right to confront the witnesses.[17] We conclude that the right to confront witnesses extended to this deprivation case in light of the interests involved.[18]
*308 We have also recognized, however, that a juvenile court may take steps to accommodate a child's fear in testifying, which may include removing a party from the courtroom, upon a finding that the child would otherwise be substantially traumatized by the event and upon use of procedures tailored to protect the right of confrontation to the extent possible.[19] By analogy, the United States Supreme Court has concluded that in the context of a criminal trial, the Confrontation Clause does not prohibit a procedure which preserves the essence of effective confrontation, despite the absence of face-to-face confrontation, if "necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate."[20]
In this case, a psychologist testified that if M.G. testified while the father was in the room the child's "anxiety would be so high that she would freeze up," that she would be unable to reasonably communicate, and that her reaction would be to the father and not to the courtroom setting in general. Accordingly, the trial court did not err in finding that the State showed that M.G. needed protection from the trauma associated with testifying in the presence of the father. The trial court took steps to ensure that the father could participate in the proceedings with assistance of counsel by allowing the father to view M.G.'s testimony as it occurred and providing a person to run notes from the father to his counsel.[21] The father's due process rights were also protected in that M.G. testified in the presence of the finder of fact and was subject to cross-examination.[22] Accordingly, the trial court's procedure in hearing M.G.'s testimony did not violate the father's right of confrontation.[23]
6. The mother and father argue that the trial court erred in allowing hearsay testimony over their objection. The parents objected to the testimony of forensic interviewer Sally Sheppard regarding statements made to Sheppard by B.H. The parents also objected to the testimony of forensic interviewer Christina Chiarelli-Helminiak because the witness testified as to "hearsay within hearsay": M.G.'s statements to the interviewer regarding statements made to M.G. by B.H.
(a) According to Sheppard's testimony, the "short story" of her forensic evaluation of B.H. was that the child made no disclosure of sexual abuse. The parents objected to Sheppard's subsequent testimony that, according to B.H., the mother told the child that if she told the truth that the father would be coming home and that the father was going to bring the child a kitten, and to say no to all the investigator's questions so that the father could return home. B.H. also told Sheppard, "[w]hen my dad comes home, we're going to make a rule that nobody touches anybody else's private parts."
At issue as to the statements by the mother was whether they were made and not the truth of any of the mother's assertions, such as whether the father was going to bring a kitten home. We considered a similar issue in Gibby v. State,[24] where we emphasized that testimony by witnesses as to statements of a child regarding "what the mother said to the [child] was not hearsay (beyond permissible hearsay under the Child Hearsay Statute) because it was not offered to show the truth of matters asserted therein."[25] If follows that if B.H.'s testimony was admissible under the Child Hearsay Statute, OCGA *309 § 24-3-16, the mother's statements were admissible to show that they were made.
The parents contend, however, that Sheppard's testimony as to B.H.'s statements was not admissible under the Child Hearsay Statute because (1) the child, who did not testify at trial, was not available to testify, and (2) B.H.'s statements to Sheppard did not describe an act of sexual or physical abuse. We disagree.
As to the first contention, we have previously found that availability to testify for purposes of the Child Hearsay Statute means competency to testify under OCGA § 24-9-5.[26] However, OCGA § 24-9-5 contemplates that any child is competent to testify in deprivation cases such as this.[27] B.H. was therefore "available to testify" as long as she was available to physically appear at trial.[28] Since B.H. had not been removed from the mother's custody at the time of trial, the child was physically available to the parents for the purposes of presenting her testimony. Accordingly, the trial court did not err in finding B.H. available for purposes of the Child Hearsay Statute.
As to the second contention, the Child Hearsay Statute applies to "[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another...."[29] The child's statements to Sheppard objected to by the parents do not describe such an act if considered in isolation. However, to put the child's statements in context, in her testimony Sheppard was reporting the results of a forensic evaluation of B.H. undertaken in light of accusations of specific acts of sexual abuse by the father. B.H.'s statements show the circumstances under which the child refused to make any disclosure: that her mother told her to say no to everything and that B.H. believed that, upon her father's return, there would be a rule of no touching of "anybody else's private parts." Accordingly, we conclude that it was within the trial court's discretion to admit B.H.'s out-of-court statements as an inextricable part of the child's description of the act of sexual abuse at issue, even though the child's description of that act was negative.[30]
(b) We discern no exception to the rule against hearsay that would render admissible Chiarelli-Helminiak's testimony as to what M.G. told her that B.H. told M.G., and the State offers none.[31] However, the statement made by B.H. to M.G. was "[B.H.] had told her that the abuse towards [B.H.] was occurring before [M.G.] lived in the home." Since M.G. testified that she was sexually molested by the father and that she personally witnessed the father sexually molest B.H., and the trial court found M.G.'s testimony credible, we conclude that the introduction of the inadmissible hearsay was harmless.
Judgment affirmed.
ANDREWS and BERNES, JJ., concur.
NOTES
[1] OCGA § 15-11-2(8)(A).
[2] (Citation omitted.) In the Interest of J.W., 271 Ga.App. 518, 519, 610 S.E.2d 144 (2005).
[3] (Citation and punctuation omitted.) In the Interest of S.S., 232 Ga.App. 287, 289, 501 S.E.2d 618 (1998).
[4] In the Interest of T.B.R., 224 Ga.App. 470, 476(1)(c), 480 S.E.2d 901 (1997).
[5] OCGA § 15-11-94(b)(4)(B)(iv) (trial court shall consider in determining whether child without proper parental care or control "[e]gregious conduct... of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature"). See In the Interest of J.P., 253 Ga.App. 732, 738, 560 S.E.2d 318 (2002).
[6] See In the Interest of G.G., 253 Ga.App. 565, 569, 560 S.E.2d 69 (2002); In the Interest of M.V., 253 Ga.App. 669, 671-672, 560 S.E.2d 125 (2002); In the Interest of V.M.T., 243 Ga.App. 732, 736(3), 534 S.E.2d 452 (2000); In the Interest of C.J.V., 236 Ga.App. 770, 776, 513 S.E.2d 513 (1999).
[7] (Punctuation omitted.) In the Interest of L.A.T., 291 Ga.App. 312, 315, 661 S.E.2d 679 (2008).
[8] OCGA § 15-11-9.1(c).
[9] See OCGA § 15-11-9.1(d)(1), (2).
[10] OCGA § 15-11-9.1(h)(1).
[11] Privileged communications under this section include communications between husband and wife, attorney and client, and licensed psychologist and patient. See OCGA § 24-9-21(1), (2), (5).
[12] The impeachment witnesses included M.G.'s own grandmother, who described the child as "not always truthful." There was no proffer that Wendt would impeach M.G. specifically as to her allegations against the father.
[13] See generally Perry v. Perry, 285 Ga.App. 892, 896(4), 648 S.E.2d 193 (2007) ("[w]e review a trial court's decision to admit or exclude evidence only for an abuse of discretion").
[14] See Georgia Uniform Juvenile Court Rule 7.1 (discovery is in conformance with the Civil Practice Act, OCGA §§ 9-11-26 through 9-11-37, except as modified by the uniform rules).
[15] See In re C.M., 179 Ga.App. 508, 510(1), 347 S.E.2d 328 (1986) (discovery in juvenile proceedings is "within confines set by the trial court") (punctuation omitted).
[16] See id. (appellant "made no showing that the limitation resulted in his being denied access to any information either favorable or material to his case").
[17] See In the Interest of C.W.D., 232 Ga.App. 200, 209(5), 501 S.E.2d 232 (1998).
[18] See, e.g., In the Interest of D.T., 284 Ga.App. 336, 341(3)(a), 643 S.E.2d 842 (2007) ("freedom of personal choice in matters of family life is a fundamental liberty interest, protected by the United States Constitution, and ... the right to the custody and control of one's child is a fiercely guarded right in our society and in our law") (punctuation omitted).
[19] See In the Interest of B.C., 225 Ga.App. 492, 494(1), 484 S.E.2d 293 (1997).
[20] Maryland v. Craig, 497 U.S. 836, 857(III), 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).
[21] See In the Interest of C.W.D., supra at 210, 501 S.E.2d 232 (no confrontation violation where "the children were permitted to testify via closed circuit television so that the mother could hear the testimony, see the witness, and consult with her counsel").
[22] See Craig, supra, 497 U.S. at 851, 110 S.Ct. 3157 (where elements of confrontation included oath, cross-examination, and observation of demeanor by the trier of fact, this was sufficient to adequately ensure testimony was reliable and subject to adversarial testing).
[23] See In the Interest of C.W.D., supra.
[24] 213 Ga.App. 20, 443 S.E.2d 852 (1994).
[25] (Emphasis omitted.) Id. at 21(2)(b), 443 S.E.2d 852.
[26] See McGarity v. State, 212 Ga.App. 17, 20(4), 440 S.E.2d 695 (1994).
[27] "Notwithstanding the provisions of subsection (a) of this Code section, in all cases involving deprivation as defined by Code Section 15-11-2... any such child shall be competent to testify." OCGA § 24-9-5(b).
[28] See generally Gibby, supra at 22(2)(d), 443 S.E.2d 852 (child victim need not be shown competent to be available).
[29] OCGA § 24-3-16.
[30] To rule otherwise indicates that child hearsay can be used to prove an act of sexual abuse but would exclude the alleged victim's hearsay statements denying the act at issue on the grounds that the denial does not describe an act of abuse, which we believe would be a result unintended by the legislature. See, e.g., Ex parte B.B.S., 647 So.2d 709, 712 (Ala. 1994) (refusing to interpret Alabama's child hearsay statute to preclude defendant from offering hearsay statements of a child tending to show he did not commit the act where child hearsay was offered to prove the act).
[31] Even if B.H.'s statements came within the Child Hearsay Statute, that they were heard by M.G., also a child, would not render M.G.'s out-of-court statements as to B.H.'s out-of-court statements admissible over objection. See Woodard v. State, 269 Ga. 317, 321(3), 496 S.E.2d 896 (1998) (1995 amendment to Child Hearsay Statute unconstitutional as to child witness, as opposed to statements of a child victim).