A11A1851. IN THE INTEREST OF A. L., a child.
(723 SE2d 76)

PHIPPS, Presiding Judge.
The father of 12-year-old A. L. appeals a juvenile court order finding A. L. deprived. He contends that the lower court erred by finding the evidence sufficient to show deprivation. For the reasons set forth below, we affirm.

> On appeal from a finding that a child is deprived, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.[1]

OCGA § 15-11-1 (1) mandates that the juvenile court's primary

---

[1] *In the Interest of W. W.*, 308 Ga. App. 407 (707 SE2d 611) (2011) (citation omitted).

responsibility is to consider and protect the welfare of children whose well-being is threatened.[2]

> A deprived child is one who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals. Deprivation is established by proof of parental unfitness arising from either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. The deprivation petition is brought on behalf of the child and *it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue.*[3]

Moreover, a juvenile court is authorized to find a lack of proper parental care or control based on a parent's failure to protect the welfare of the child whose well-being is threatened.[4]

The father contends that "[n]o evidence has been presented that he has exhibited improper care or control of the child, deprived her of subsistence or education or other care or control necessary for the child's physical, mental or emotional health or morals." He argues that the Whitfield County Georgia Department of Human Resources Division of Family and Children Services (DFCS) should have been required to prove "that he directly did something to harm the child, deprive her or somehow tangibly show himself to be an unfit father," and that it failed to meet that burden of proof.

Construed in the light most favorable to upholding the juvenile court's finding that A. L. was deprived, the evidence showed that DFCS had an ongoing case with the family since May 2010. The parents, both of whom lived in the home with A. L., failed to comply with a case plan goal to cooperate with DFCS and with other professionals working with the family. On cross-examination, the father agreed that the mother had always been A. L.'s primary caretaker. The father testified that because he worked overtime, the mother ordinarily took A. L. to the child's doctor appointments. As the primary caretaker, the mother imposed various restrictions on the educational and social services provided to A. L., but consistently failed to provide school officials and DFCS with the child's medical

---

[2] *In the Interest of D. Q.*, 307 Ga. App. 121, 125 (704 SE2d 444) (2010).

[3] *In the Interest of W. W.*, supra at 410 (citations and punctuation omitted; emphasis supplied); *In the Interest of J. C.*, 264 Ga. App. 598, 599 (591 SE2d 475) (2003); OCGA § 15-11-2 (8) (A).

[4] *In the Interest of B. H.*, 295 Ga. App. 297, 298 (2) (671 SE2d 303) (2008).

records, which those professionals deemed necessary to substantiate the restrictions, to make educational decisions regarding A. L., and to complete a psychological evaluation of A. L.

For instance, the mother claimed that A. L. had thirty-four types of seizure disorders as well as ten to eleven deadly allergies. A counselor from A. L.'s middle school testified that the mother had requested that A. L. not be permitted to take home books, and "a lot of the things that were required in the classroom she wasn't able, according to mom, to do." The mother wrote a letter to notify the school that A. L. was "neurologically disabled" and unable to focus, could not be around computers, and could not read more than ten books in a school year (and if she did, she would have seizures). On a progress report sent home, the mother wrote, "Fail her, please." The counselor testified however, that A. L. did not exhibit behavior problems that necessitated the school referring A. L. for medical treatment, or that otherwise indicated that A. L. needed to be in a special education program. According to the counselor, A. L. was "able to do the work" and participated in science and poster projects.

A. L. had eight unexcused absences from school within the three-to four-month period immediately before the adjudicatory hearing, and because of incomplete assignments, A. L.'s grades were "borderline," with failing averages in reading and science. A. L.'s literacy teacher was particularly concerned about the limitations on the number of books the mother reported A. L. could read because "she would not be able to pass with those kind[s] of regulation[s] . . . that she can't take her books home and that she can't read over 10 books." The mother missed a scheduled truancy meeting with the school.[5]

A psychologist who, at the behest of DFCS, had examined the mother and A. L., testified that she needed A. L.'s medical and school records to complete her report and make an informed diagnosis of A. L. The need for the medical records thus was two-fold: (1) so that, based on credible medical evidence, the school could address A. L.'s reported limitations; and (2) so that the psychologist employed by DFCS could complete an evaluation of A. L. and properly diagnose her.

However, as the trial court found, the mother interfered and refused to cooperate with efforts to verify the medical conditions she

---

[5] See *In the Interest of J. C.*, supra at 600 (1) (because of children's high number of unexcused absences from school, the extended period during which the children continued to miss school, and the parents' unwillingness to talk with the school representative about their children's truancy, a rational trier of fact could have found by clear and convincing evidence that the children were not receiving the education required by law and were deprived for that reason).

reported. Indeed, at the time DFCS took custody of A. L., it was discovered that A. L. was being administered medication which her doctor had discontinued six to seven months earlier. In its order, the trial court took judicial notice of its own record and of all previous unappealed findings of fact,[6] and noted that based on various inconsistencies in the mother's testimony and the evidence presented, the mother had little credibility with the court. And in the event he was awarded custody of A. L., the father affirmed that he would continue to work, which supported the trial court's conclusion that he would allow the mother to continue as A. L.'s primary caretaker. Under those circumstances, any rational trier of fact could have found by clear and convincing evidence that A. L. was deprived.[7]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED FEBRUARY 1, 2012.

*Avrett, Ponder & Withrock, William B. Barnwell*, for appellant.
*Samuel S. Olens, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Calandra A. Harps, Assistant Attorney General, Bruce A. Kling*, for appellee.

---

[6] *In the Interest of J. P. V.*, 261 Ga. App. 194, 196 (2) (582 SE2d 170) (2003) (a court may take judicial notice of records in the same court, where the court indicated on the record that it was taking judicial notice of its prior orders, which were unappealed, and the mother failed to object); *In the Interest of J. A.*, 298 Ga. App. 11, 14 (1) (679 SE2d 52) (2009) (court took judicial notice of its prior findings in determining whether the children continued to be deprived and informed the parties during the hearing that it was doing so).

[7] See *In the Interest of B. H.*, supra (where both parents lived in the same household as child, deprivation was found as to the mother for failing to protect the child from sexually abusive father as to whom deprivation was also found); *Brown v. Fulton County Dept. of Family &c.*, 136 Ga. App. 308, 309-310 (2) (220 SE2d 790) (1975) (unexplained injuries to child supported finding of deprivation where parents argued that there was no showing that the child was physically abused by them); *In the Interest of J. A.*, supra at 15 (1) (court was entitled to consider the fact that the case plan had not been completed as evidence that the children's deprivation was likely to continue if they were returned to father); *In the Interest of B. B.*, 267 Ga. App. 360, 362 (1) (599 SE2d 304) (2004) (a mother's failure to cooperate with DFCS and adhere to reunification plan supported the juvenile court's decision extending its previous deprivation order); *In the Interest of J. C.*, supra (deprivation found due to educational neglect).