A06A2294. IN THE INTEREST OF C. L. Z., a child.
(641 SE2d 243)

RUFFIN, Judge.

The Pierce County Juvenile Court found C. L. Z., a four-year-old girl, to be deprived, and awarded temporary custody to the Pierce County Department of Family and Children Services ("DFCS"). C. L. Z.'s grandmother, who is her legal guardian, appeals the finding of deprivation. Because we conclude that the State did not prove all the criteria necessary for a finding of deprivation, we reverse.

In an appeal from a deprivation order, " 'we review the evidence from the juvenile court hearings in [a] light most favorable to the court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the [child was] deprived.' "[1] Viewed in such light, the evidence shows that C. L. Z.'s grandmother became the child's guardian and obtained custody of her in September 2005. On January 18, 2006, C. L. Z. and her grandmother went to the Satilla Square shopping center. At approximately 5:00 p.m., Tina Crews, who worked at the shopping center, saw C. L. Z. and her grandmother as they walked past her office. Crews took note of them because the grandmother was yelling at C. L. Z. When Crews left work at 6:00 p.m., she saw C. L. Z. and her grandmother in the parking lot at their vehicle. C. L. Z., who was crying, had a purple sweater tied over her eyes. The grandmother was "very mad" and was pushing the back of C. L. Z.'s head trying to make C. L. Z. face the vehicle. As Crews approached the grandmother, another witness, Heather Flowers, told Crews that she had already called the police to report the incident.

Flowers was in the shopping center parking lot shortly before 6:00 p.m. when she first saw the grandmother and C. L. Z. As they walked across the parking lot, the grandmother would periodically stop, bend down to the child's level, and yell angrily at C. L. Z., "screaming at the top of her lungs." Flowers did not see C. L. Z. misbehave or try to get away from her grandmother. Once C. L. Z. and her grandmother reached their vehicle, the grandmother, who was still "screaming," put her hand on the back of C. L. Z.'s head and "forcefully" pushed her, face first, into the side panel of the vehicle.

---

[1] *In the Interest of J. C.*, 264 Ga. App. 598 (591 SE2d 475) (2003).

When C. L. Z. turned her head, the grandmother pushed her face back against the vehicle. The grandmother then blindfolded C. L. Z. with a purple piece of clothing. Flowers called the police.

When Officer Donna Waters arrived at the shopping center, C. L. Z. was sitting inside the vehicle and the grandmother was leaning inside the vehicle yelling at C. L. Z. Officer Waters stood nearby for several minutes and observed the grandmother "throwing stuff around" in the vehicle, walking around the vehicle, and yelling at C. L. Z., who was "just sitting there." After speaking to Crews and Flowers and to her supervisor, Officer Waters arrested the grandmother for cruelty to a child and simple battery.

The juvenile court entered a shelter care order, putting C. L. Z. into DFCS custody, and DFCS filed a deprivation petition. C. L. Z. was placed with other relatives. At the hearing on the deprivation petition, a counselor testified about his child and family assessment and evaluation of C. L. Z.'s family situation. He had met with C. L. Z.'s mother, father, and father's wife, the grandmother and her husband, the father's sister, and others as a group for an hour and a half. He did not meet separately with the grandmother.

The counselor recommended that C. L. Z. not be returned to her grandmother at that time, but remain with the relatives with whom she had been placed. He did not, however, testify as to the effect of the January 18, 2006 incident on C. L. Z. or state that she had been harmed by her grandmother's actions on that day or at any other time. While he had conducted a psychological assessment of C. L. Z., he gave no specific example of how C. L. Z. was deprived as a result of being in her grandmother's custody, other than referring to C. L. Z.'s past medical problems, which were unrelated to the January 18, 2006 incident. The guardian ad litem also stated that he believed the child was deprived, but, again, gave no specific example of the effect of the grandmother's behavior on the child. The juvenile court found that C. L. Z. was deprived due to physical and emotional abuse, and awarded temporary custody of her to DFCS.

A child is deprived if he or she "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[2] A deprivation action focuses on the needs of the child and whether those needs are being met.[3] A temporary loss of custody on the basis of deprivation is justified only when the deprivation "resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or

---

[2] OCGA § 15-11-2 (8) (A).
[3] See *In the Interest of C. C.*, 249 Ga. App. 101, 103 (547 SE2d 738) (2001).

neglect of the child or by what is tantamount to physical or mental incapability to care for the child."[4] Proof of unfitness must be shown by clear and convincing evidence; this standard recognizes the importance of the familial bond and "helps eliminate the risk that a factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior."[5]

The only incident of physical and emotional abuse cited by the juvenile court was the January 18, 2006 incident, and it was this lone event that was offered in support of the juvenile court's deprivation finding. Other than testimony that C. L. Z. was crying, the State offered no evidence that she suffered any emotional or physical harm from the incident.[6] The State did not ask either the counselor who conducted a psychological assessment of C. L. Z. or her guardian ad litem what effect, if any, the incident had on her.[7] There was no testimony that the grandmother had a history of mental or emotional problems or that she routinely had difficulty controlling her anger.[8] The evidence presented did not show that this was anything other than an isolated, albeit highly inappropriate, outburst by the grandmother. While we cannot say that these facts would never merit a finding of deprivation, under these circumstances, where the State has failed to demonstrate harm to C. L. Z., clear and convincing evidence of deprivation has not been established.[9]

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED JANUARY 9, 2007.

*McGee & McGee, James B. McGee III*, for appellant.

---

[4] (Punctuation omitted.) *In the Interest of S. J.*, 270 Ga. App. 598, 599 (607 SE2d 225) (2004).

[5] (Punctuation omitted.) *In the Interest of E. M.*, 264 Ga. App. 277, 278 (590 SE2d 241) (2003).

[6] See *In the Interest of T. L.*, 269 Ga. App. 842, 845 (605 SE2d 432) (2004). Compare *In the Interest of D. C.*, 268 Ga. App. 882, 885 (2) (602 SE2d 885) (2004) (clear and convincing evidence of deprivation existed where child was repeatedly left home alone and he stated that he was frightened by this). Officer Waters saw a scratch on C. L. Z.'s face, but did not know if it was recent. She saw no bruises on C. L. Z.

[7] If the counselor made a written report, it is not contained in the record.

[8] Compare *In the Interest of D. L. W.*, 264 Ga. App. 168, 170 (1) (590 SE2d 183) (2003) (evidence of mother's severe mental disorder was clear and convincing evidence of deprivation); *In the Interest of U. B.*, 246 Ga. App. 328, 328-329 (1) (540 SE2d 278) (2000) (children were properly found to be deprived based on father's history of abusive behavior toward them and their mother).

[9] See *In the Interest of J. P.*, 280 Ga. App. 100, 105 (2) (633 SE2d 442) (2006).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jason S. Naunas, Assistant Attorney General, Charles R. Reddick,* for appellee.