A06A1992. IN THE INTEREST OF D. S. et al., children.

(642 SE2d 431)

RUFFIN, Judge.

A Pike County Juvenile Court found J. W. deprived and awarded temporary custody of him to the Department of Family and Children Services ("DFCS").[1] His mother appeals the order, and, for reasons that follow, we reverse.

A deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[2] In determining whether a child is deprived, the court focuses on the needs of the child rather than parental fault.[3] However, a finding that a child is deprived does not necessarily result in a loss of custody by the parent. Even a temporary loss of custody is not authorized unless the deprivation "resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child."[4] This standard "safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a

---

[1] The deprivation petition also named D. S., J. W.'s stepbrother. The deprivation action was dismissed as to D. S.

[2] OCGA § 15-11-2 (8) (A).

[3] See *In the Interest of J. P.*, 280 Ga. App. 100, 104-105 (2) (633 SE2d 442) (2006).

[4] *In the Interest of K. S.*, 271 Ga. App. 891, 892-893 (611 SE2d 150) (2005).

factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior."[5]

On appeal from a finding of deprivation, we

> review the evidence in [a] light most favorable to the juvenile court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived and whether, under the circumstances, the court properly awarded temporary custody of the child.[6]

We do not weigh the evidence or evaluate witness credibility, but defer to the juvenile court's factfinding.[7] Applying this standard, the evidence shows that J. W., who was twelve years old at the time of the hearing, lived with his mother, stepfather, and a four-year-old stepbrother, D. S. J. W. has been diagnosed with attention deficit hyperactivity disorder ("ADHD").

DFCS received a complaint about the family in June 2005. The mother admitted to DFCS that she had left the home with the children overnight following an argument in which the stepfather had been critical of J. W., telling him that "he was never going to amount to anything, that he was lazy and no good." After interviewing the family, DFCS opened a case with the intent of providing in-home counseling services to them. The case was opened based on the alleged emotional neglect of J. W.

A counselor who met with the family in their home testified that the stepfather routinely "showed a lot of frustration" and "rant[ed] and rav[ed]" about the family's involvement with DFCS, often in the children's presence. She felt that the mother was not always forthcoming with information and was caught between her children and her husband. The counselor stated that J. W. was quieter than other children his age and hesitant to make eye contact. She "never once saw a smile or a laugh" from J. W. However, she did not see anything to cause her to believe that the mother and stepfather were "emotionally or psychologically abusive" to J. W. The counselor believed that the parents, especially the mother, learned from parenting classes they took as part of their case plan. She ended her work with the family after the stepfather directed profanity at her.

A DFCS supervisor testified that J. W. was "always on punishment" and "always the focus for being in trouble" at home. But J. W. "never had any behavioral problems at school and never had any

---

[5] *In the Interest of E. M.*, 264 Ga. App. 277, 278 (590 SE2d 241) (2003).

[6] *In the Interest of D. A.*, 240 Ga. App. 561, 562 (524 SE2d 248) (1999).

[7] See id.

disciplin[ary] action taken against him" at school, although he was failing three classes and consistently did not complete his homework. The family's caseworker thought J. W. seemed "sad and depressed."

The guardian ad litem representing J. W. stated that "I've never seen a child that is to me as kicked down and submissive as this child is." J. W.'s paternal grandmother stated that when J. W. is with her, however, he is outgoing and energetic. J. W.'s father, who at the time of the hearing had recently returned from a 13-month tour of duty with the Army in Iraq, testified that, since J. W.'s mother remarried, J. W. has been "very subdued" and less energetic, and sometimes does not want to return to his mother's house after visiting his father. The father stated that the mother did not tell him about the DFCS case for five months, although he had been home on leave and seen J. W. during that five-month period.[8] The father first learned that J. W. has ADHD at the hearing; the mother had not provided medication for ADHD when J. W. visited his father. According to the father, the mother also failed to tell him about J. W.'s experiences at school, including that he was failing three classes and was enrolled in special education classes. The father testified that he feels J. W. is "being emotionally abused."

The record is replete with examples of the stepfather's inappropriate verbal combativeness toward DFCS employees, including the use of profanity and demeaning language, sometimes in the children's presence. He indicated to DFCS employees that he was just going through the motions of complying with their requirements and did not intend to change his behavior.

In October 2005, DFCS brought a deprivation proceeding on behalf of J. W. and D. S., alleging that the mother and stepfather refused to review or sign the case plan DFCS proposed and were otherwise uncooperative with DFCS. The mother and stepfather eventually signed a case plan, which included family counseling, individual counseling for the mother and J. W., and alcohol treatment and alcohol screenings for the stepfather.[9] At the time of the hearing in February 2006, the family and J. W. had begun counseling, and it appeared that the mother had scheduled an appointment to begin counseling.

---

[8] The DFCS caseworker testified that the mother refused to provide DFCS with the father's contact information.

[9] The juvenile court properly does not cite the psychological evaluations of the mother, stepfather, and J. W. as evidence supporting its decision, since the psychologist was not available for cross-examination. See *In the Interest of J. T. S.*, 185 Ga. App. 772, 773 (2) (365 SE2d 550) (1988). Thus, we do not consider them in determining whether clear and convincing evidence of deprivation and parental unfitness existed. We also note that a number of the juvenile court's written findings of fact are not supported by the record before us and appear to have been copied verbatim from DFCS's deprivation petition.

The juvenile court concluded that J. W. was deprived and temporarily removed him from his mother's custody. It found that the mother was unfit to have custody of J. W. unless she "complete[d] a Case Plan to reduce the risk of harm to [J. W.]." The mother appeals, alleging that neither deprivation nor parental unfitness was proven by clear and convincing evidence.

The mother contends that the juvenile court could not have found clear and convincing evidence that J. W. was deprived. She argues that the stepfather's criticism of J. W., which led to the opening of the DFCS case, was an isolated incident and that there was no other evidence to suggest emotional neglect. While there was evidence of the stepfather's displays of anger and verbal aggression toward DFCS employees and that J. W. was often quiet and withdrawn while in his mother and stepfather's care, there was no evidence specifically connecting these two facts. Indeed, the in-home counselor who worked with the family saw no evidence that J. W. was emotionally abused by the mother and stepfather. The mother is correct that the State only presented one episode in which the stepfather criticized J. W. directly. And it offered no witness to testify that the stepfather had otherwise directed abusive behavior toward J. W. or that the stepfather's behavior was a factor in J. W.'s apparent sadness or withdrawal.[10] The evidence presented at the hearing simply did not rise to the level of clear and convincing evidence required for a finding of deprivation.[11]

Moreover, "even if the evidence was sufficient to show that the child was in some way deprived, it was wholly insufficient to establish that the [mother] was unfit."[12] In the one instance when the stepfather criticized J. W., the mother removed the children from the situation. At the time of the hearing, the mother was complying with the case plan. There was testimony that the mother was learning from the parenting classes she took and was implementing parenting techniques suggested by the family therapist. On the record before us, the State did not carry its burden of proving by clear and convincing evidence that J. W. was without the proper care for his emotional health and thus deprived.[13]

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

---

[10] See *In the Interest of C. L. Z.*, 283 Ga. App. 247 (641 SE2d 243) (2007).

[11] We note that the State was not seeking removal of J. W. from the mother's home, but only a protective order requiring the mother and stepfather to comply with the case plan and cooperate with DFCS. Accordingly, it may have chosen not to call witnesses, such as J. W.'s counselor, whom it might have called if it were seeking removal. At the hearing, the guardian ad litem recommended temporary removal of J. W. from the mother's home.

[12] *E. M.*, supra at 281.

[13] See *C. L. Z.*, supra; compare *In the Interest of U. B.*, 246 Ga. App. 328, 328-330 (1) (540 SE2d 278) (2000).

DECIDED FEBRUARY 28, 2007.

*Justin B. Grubbs*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Virginia B. Fuller, Assistant Attorney General, Tammy M. Griner*, for appellee.