690 S.E.2d 627 (2010)
In the Interest of K.B., a child.
No. A09A2299.
Court of Appeals of Georgia.
January 14, 2010.
*628 Curtis W. Miller, Lithonia, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Robert E. Hall, Roswell, for appellee.
BARNES, Judge.
The mother of K.B. appeals a juvenile court order adjudicating the child deprived and granting temporary custody to the Department of Family and Children Services (DFCS), arguing that the court's deprivation finding was based solely on hearsay evidence. For the reasons that follow, we affirm the juvenile court.
On December 14, 2008, DFCS responded to a call from South Fulton Hospital regarding allegations that two-year-old K.B. and her eleven-month-old brother had been abused and neglected. By the time the caseworker arrived at the hospital, the brother had been pronounced dead and an autopsy was pending. DFCS sought and received authorization to take K.B. into temporary shelter care and filed a deprivation petition, alleging that the parents' explanations of the brother's death were "inconsistent" and alleging that K.B. had "scratches, belt marks and severe scarring all over her body."
The parents waived the 72-hour hearing and consented to findings of probable cause that deprivation existed, that DFCS had made reasonable efforts to prevent removing K.B. from her home, and that continuing in the home would be contrary to K.B.'s welfare. DFCS filed another deprivation petition on December 19, 2008, alleging that the parents were incarcerated and charged with cruelty to children as to K.B., who had injuries medical personnel had determined were consistent with child abuse. DFCS amended the petition on January 5, 2009, alleging the parents were also incarcerated without bail on murder and cruelty to children charges related to K.B.'s brother. Following a hearing on January 30, 2009, the juvenile court filed an order of adjudication and disposition finding K.B. to be deprived. K.B.'s mother appeals this order, arguing that the court's finding of deprivation was not supported by the evidence and was based mostly on hearsay testimony.
1. On appeal, this Court reviews the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. In the Interest of D.L.W., 264 Ga.App. 168, 590 S.E.2d 183 (2003). A deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2(8)(A). "[T]he deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." (Citation omitted.) In the Interest of J.W., 271 Ga. App. 518, 518-519, 610 S.E.2d 144 (2005). In determining whether a child is without proper parental care, the court considers evidence of a parent's egregious physically abusive conduct toward the child, a parent's physical, mental, or emotional neglect of the child or of another child, and a sibling's injury or death "under circumstances which constitute substantial evidence that such injury or death resulted from parental neglect or abuse." OCGA § 15-11-94(b)(4)(B) (iv)-(vi).
Contrary to the mother's arguments, the juvenile court did not rely mainly on hearsay testimony to establish the facts on which it based its deprivation finding. Viewed in the light most favorable to the juvenile court's factual findings, the record shows that a pediatrician who examined K.B. testified that the child had a constellation of injuries consistent with physical abuse. *629 Based on the number and location of her injuries, K.B. suffered repeated incidents of being struck with an object. K.B. had multiple marks on her abdomen and thighs that appeared to have been caused by being hit with an object looped over, such as a belt or cord. She had scars on both sides of her legs and buttocks, in areas normally covered by clothing or a diaper, that were caused by significant abrasions or burns from a caustic substance or hot liquid. She had been treated for a broken collarbone in November 2007, purportedly caused by her falling off a bed. Finally, she had healing fractures of six ribs on her left side and two on her right, which in the physician's opinion were caused by more force than a reasonable adult would use when handling a child. Based on the location of the fractures at the back of K.B.'s rib cage, they were caused by "a force that is pulling on the ribs pulling them away from the spinal column from the vertebral body and flexing them there," such as "if one grabs a child about the torso or about the chest with their hands and squeezes forcefully." Although the mother said K.B.'s injuries resulted from her falling on the playground a year and a half before, the pediatrician testified that falling would not have caused these injuries. He diagnosed K.B. with battered child syndrome.
A detective who executed a search warrant at the parents' house the day after K.B.'s brother died found the house to be "in complete disarray," with an extremely strong foul smell coming from the children's bedroom. The detective found vomit and blood in the deceased child's bed and bedding, as well as vomit on K.B.'s child seat, which the father said they had covered up with a comforter three weeks earlier instead of cleaning it when K.B. threw up. Dirty and clean clothes were scattered over the floor and "the cupboards were bare," with no food, milk, or formula in the house.
According to his death certificate, K.B.'s brother died from blunt force injuries to his head, and the caseworker testified that the parents gave conflicting explanations of the circumstances surrounding the infant's death. Both parents were in custody without bond, although they were present at the hearing and represented by counsel. The father testified that his attorney had advised him not to answer questions because of the pending related criminal matter. The father's mother testified that she had been concerned because her grandson had lost weight in the previous few months, although the parents had assured her he was fine. She also testified that she did not believe the parents' explanations of K.B.'s injuries, which were for example that the child's broken collarbone resulted from her falling off the bed or the injuries to her buttocks and thighs came from being dragged.
The record thus contains clear and convincing evidence establishing that K.B.'s sibling died "under circumstances which constitute substantial evidence that such injury or death resulted from parental neglect or abuse." OCGA § 15-11-94(b)(4)(B)(iv)-(vi). The record also contains evidence that K.B. was physically abused while in her mother's custody and therefore lacked the proper parental care necessary for her physical and emotional health. See In the Interest of B.H., 295 Ga.App. 297, 298(2), 671 S.E.2d 303 (2008). The juvenile court committed no error.
2. The mother also argues that the testimony of a single witness should be insufficient to establish the facts in a deprivation proceeding, and should require the testimony of a second witness or some other form of corroboration. That is not our law, however. The statute provides:
The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.
OCGA § 24-4-8. As to the requirement that an accomplice must be corroborated, "[t]he basis for this principle is to safeguard against one person falsely maintaining that he and the defendant were accomplices to commit the crime." (Emphasis omitted.) Coleman v. *630 State, 227 Ga. 769, 771(1), 183 S.E.2d 379 (1971). As to the corroboration requirement for perjury convictions, common law required the testimony of two witnesses because otherwise "the testimony of one witness would merely be one oath against another," although under the statute corroborating testimony dispenses with the need for a second witness. McLaren v. State, 4 Ga.App. 643, 646, 62 S.E. 138 (1908).
None of these considerations applies in this case, and under the statute the testimony of the pediatrician, the detective, and the caseworker are sufficient to sustain the adjudication that K.B. was deprived.
Judgment affirmed.
MILLER, C.J., and ANDREWS, P.J., concur.