**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2021**

# In the Court of Appeals of Georgia

A21A0347. IN THE INTEREST OF J. R. et al., children.

REESE, Judge.

Adam Robbins (the "Appellant") appeals from the juvenile court's determination that J. R., a fourteen-year-old child, M. R., an eight-year-old child, and J. R., a two-year-old child, were dependent while in the Appellant's custody. He argues that there was insufficient evidence to support the court's findings that domestic violence had been committed in the presence of the children and that he had substance abuse problems leading to neglect. We disagree, and for the reasons set forth infra, affirm.

Viewed in the light most favorable to the juvenile court's judgment,[1] the record shows the following. In February 2020, the court entered a removal order placing the three children in the custody of their grandmother. The court found that the Division of Family and Children Services ("DFCS") had received a report that the children's mother had been arrested for possession of methamphetamine with the youngest child present. There was later a domestic violence incident with the children present, and the mother took the two youngest children to her place of employment. There, emergency services had to be contacted after the mother lost consciousness due to overdosing on drugs. According to the trial court's removal order, the children stated that the Appellant was the primary aggressor of the domestic violence incident, and the older children were fearful of their father and mother and did not want to return to them.

DFCS filed a dependency petition regarding the three children in March 2020. The petition alleged that the Appellant had committed domestic violence against the mother in front of the children, that both parents lacked the protective capacity to prevent the children from being present during domestic violence situations, that the

---

[1] See *In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018).

2

Appellant did not have sufficient housing or income to care for the children, and that the Appellant had unresolved drug abuse issues.

The court held a hearing on the petition. As a preliminary matter, the mother consented to the children's dependency. Melissa Wells, an expert in forensic interviewing from the Greenhouse Child Advocacy and Sexual Assault Center, testified that she had interviewed eight-year-old M. R. and fourteen-year-old J. R. in February 2020. In the interview with M. R., the child described and demonstrated to Wells how the Appellant had placed her in a headlock. M. R. had also heard her parents arguing frequently. In J. R.'s interview, he told Wells that he had also heard his parents frequently arguing. While J. R. never "directly witnessed" any physical abuse, he had seen bruises on his mother's arm, and his mother had told him that the Appellant physically abused her. J. R. told Wells that when these incidents occurred in the home, he would put his siblings in his bedroom, lock the door, and sit outside the bedroom to make sure his siblings were safe. Wells testified that, although the children did not specifically state it, the children had "some fear" during these arguments between the Appellant and the mother.

The mother testified that she and the Appellant had been together for 17 years, and that she had experienced domestic violence during that time. The domestic

violence occurred more often with drug use. She had witnessed the Appellant use marijuana and methamphetamine within the prior six months. While the mother testified that she had never been hit by the Appellant, the Appellant had sometimes physically restrained her during their arguments. The mother was fearful of the Appellant, and she testified that the children had told her they were traumatized by witnessing these numerous altercations.

J. R., the 14-year-old, testified that he and the other children had witnessed his parents yelling, "cuss[ing,]" and "try[ing] to say the most hurtful things to each other to get under each other's skin." During these incidents, he would take the younger children away to "[t]o protect them from seeing the things [he'd] seen." J. R. testified that he was not scared of these incidents, but they would "freak [him] out" and he was traumatized by them. J. R. never witnessed physical abuse, but he did later see bruising on his mother and the Appellant. J. R. could tell when the Appellant was using drugs because the Appellant acted irritable and distant. J. R. had last seen the Appellant act this way in January 2020.

Ashley Johnson, the DFCS case worker for the children, testified that she witnessed the Appellant under the influence of methamphetamine in February 2020. Johnson requested a drug screen, but the Appellant refused to comply.

In May 2020, the court entered an order of adjudication finding the children to be dependent. The court found that: the children had been abused or neglected and were in need of protection by the court; acts of domestic violence were committed in the presence of the children, who were able to hear or see the events; the oldest child had to care for his siblings during these incidents; the mother and the Appellant had inappropriate responses to domestic violence and failed to protect the children from abuse; the children remained in a state of dependency due to the domestic violence; and the mother's and the Appellant's drug use adversely affected the children. This appeal followed.

> On appeal from an order finding a child to be a dependent child, we review the juvenile court's finding of dependency in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent. In making this determination we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened.[2]

With these guiding principles in mind, we now turn to the Appellant's claims of error.

---

[2] *In the Interest of R. D.*, 346 Ga. App. at 259 (1) (punctuation and footnote omitted).

1. The Appellant argues that there was no evidence that acts of family violence were committed in the children's presence. We disagree.

A dependent child is defined, in relevant part, as a child who "[h]as been abused or neglected and is in need of the protection of the court[.]"[3] "Neglect" is defined in part as "[t]he failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals[.]"[4] "Abuse" means:

> (A) [a]ny nonaccidental physical injury or physical injury which is inconsistent with the explanation given for it suffered by a child as the result of the acts or omissions of a person responsible for the care of a child; (B) [e]motional abuse; (C) [s]exual abuse or sexual exploitation; (D) [p]renatal abuse; or (E) [t]he commission of an act of family violence as defined in Code Section 19-13-1 in the presence of a child.[5]

An act of family violence includes, as relevant here, any felony or the commission of the offenses of battery, simple battery, assault, or simple assault.[6] An act of family

---

[3] OCGA § 15-11-2 (22) (A).

[4] OCGA § 15-11-2 (48) (A).

[5] OCGA § 15-11-2 (2).

[6] See OCGA § 19-13-1.

6

violence is done in the "presence of a child[ ]" if the child is "physically present or able to see or hear."[7] Finally, "the record must contain evidence of present dependency, not merely past or potential future dependency."[8]

In this case, given the standard of review on appeal,[9] there was sufficient evidence for the trial court to determine that family violence had been committed in the presence of the children. The evidence showed that the children heard the arguments between the Appellant and the mother, and saw the bruising on both parents in the aftermath of these arguments. At the very least, this evidence was sufficient to show that the children heard these incidents of family violence.[10]

Appellant's citation to *In the Interest of K. D.*[11] is unavailing. In that case, the father committed an act of aggravated assault against the mother when he threatened her and pointed a gun at her outside their home.[12] We held that there was insufficient

---

[7] OCGA § 15-11-2 (2) (E).

[8] *In the Interest of H. B.*, 346 Ga. App. 163, 165 (1) (816 SE2d 313) (2018).

[9] See *In the Interest of R. D.*, 346 Ga. App. at 259 (1).

[10] See OCGA § 15-11-2 (2) (E).

[11] 344 Ga. App. 423 (810 SE2d 193) (2018).

[12] Id. at 426.

evidence of dependency because the children were asleep inside the house and there was "no evidence that any of the children saw or heard the exchange between their mother and father."[13] Here, by contrast, the children heard the arguments between the parents and later saw bruising on both parents.[14]

The Appellant also contends that there was no evidence of present dependency because the record showed that the Appellant and the mother argued only when they resided together, and they did not reside together at the time of the hearing. The trial court found that "[d]espite the [m]other and [Appellant] presently living apart, the nature and history of their relationship require[d] the Court to find that the children remain[ed] in a current state of dependency due to domestic violence between the parties[.]" At trial, the mother testified that she divorced the Appellant in 2009 but continued to reside with him until 2020. Although the mother testified that she left the residence most recently in January 2020, she continued to see the Appellant and

---

[13] Id. at 427 (1).

[14] Cf. *In the Interest of M. S.*, 352 Ga. App. 249, 260-261 (834 SE2d 343) (2019) (reversing the trial court's dependency determination where there was "no evidence that [the child] was ever present for, witnessed, or heard any of the alleged instances of domestic violence[ ]").

at one point resided with him after this date. Given this evidence and the frequent discord between the parents, the trial court was authorized to find a present dependency existed and that the dependency was likely to continue.[15]

2. The Appellant argues that the trial court erred in finding that he had a current drug problem. He contends that evidence that he used drugs in the past was not evidence he was using drugs at the time of the hearing in April 2020. We discern no reversible error.

Several witnesses testified as to the Appellant's recent drug use. J. R. testified that the Appellant's behavior in January 2020 was consistent with using drugs. The mother testified that the Appellant had consumed marijuana and methamphetamine in the previous six months. Johnson witnessed the Appellant under the influence of methamphetamine in February 2020. Finally, when Johnson requested that the Appellant undergo a drug screen, he refused. This evidence supported the trial court's

_____

[15] See *In the Interest of S. N.*, 291 Ga. App. 628, 632 (1) (a) (662 SE2d 381) (2008) (juvenile court may find "that the parents' conduct over the years was a better predictor of their future conduct than a few months of partial stability"); *In the Interest of J. B. M.*, 284 Ga. App. 480, 485 (1) (644 SE2d 317) (2007) (juvenile court can consider parent's past inability to remedy abuse as evidence that dependency is likely to continue). But see *In the Interest of M. S.*, 352 Ga. App. at 260 (no evidence of present dependency based on family violence where the parents no longer lived together, even though they lived next door to each other, remained friends, and considered entering into a romantic relationship again in the future).

finding that, at the time of the hearing, the Appellant had a current drug abuse problem.[16]

*Judgment affirmed. Doyle, P. J., and Brown, J., concur.*

---

[16] See *In the Interest of S. N.*, 291 Ga. App. 628, 632 (662 SE2d 381) (2008) (in a parental termination action, evidence showing the mother had not consistently submitted to drug screens, the most recent drug screen was positive for cocaine, and the mother's admission that she used methamphetamine in the previous year was sufficient evidence of the mother's ongoing drug problems); cf. *In the Interest of G. R. B.*, 330 Ga. App. 693, 701-702 (769 SE2d 119) (2015) (no clear and convincing evidence of present deprivation where father had passed several recent drug screens and indicated a willingness to undergo random drug tests).