**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 27, 2025**

# In the Court of Appeals of Georgia

A25A1132. IN THE INTEREST OF R. C., a child.

DOYLE, Presiding Judge.

The mother of R. C. appeals an order finding R. C. to be a dependent child and awarding temporary custody to the Fulton County Division of Family and Children Services ("DFCS"). Although we agree with the juvenile court that there was clear and convincing evidence of dependency, because certain findings that may have resulted in the court's determination were not supported by any evidence and because the court failed to adequately explain its reason for ordering supervision of visitation, we vacate the order and remand for reconsideration and entry of an order consistent with this opinion.

"On appeal from an order finding a child to be a dependent child, we review the juvenile court's findings of dependency in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent." *In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018) (punctuation omitted). See also OCGA § 15-11-180. Under Georgia law, "[c]lear and convincing evidence is an intermediate standard of proof which is greater than the preponderance of the evidence standard ordinarily employed in civil proceedings, but less than the reasonable doubt standard applicable in criminal proceedings." *In the Interest of Ha. H.*, 374 Ga. App. 468, 476 (2) (913 SE2d 107) (2025) (punctuation omitted). "In making this determination we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened."*In the Interest of R. D.*, 346 Ga. App. at 259 (1) (punctuation omitted).

So viewed, the record shows that in April 2024, fourteen-year-old R. C. was arrested for entering an automobile. He had been living with his aunt, C. C., while his

mother was incarcerated, and he reported to DFCS that he was trying to find a place to sleep after C. C. had kicked him out of her home a week earlier.[1] Following R. C.'s arrest, law enforcement attempted to return him to C. C. but was unable to make contact with her. The mother waived a preliminary protective hearing and admitted to a finding of probable cause of dependency on the basis that she is incarcerated, the child was without a caregiver for daily needs, and removal from the home was necessary to prevent abuse or neglect pending a hearing on the dependency petition. The preliminary protective order awarded DFCS temporary legal and physical custody of R. C.

In May 2024, DFCS filed a dependency petition based on the mother's continued incarceration and lack of a caregiver for R. C. based on C. C.'s unwillingness to allow him back into her home. At the hearing on the petition, a DFCS case manager testified that after R. C.'s arrest, DFCS made repeated attempts to contact C. C. to no avail. The case manager also testified that the mother's incarceration prevented her from providing R. C. with adequate care. A second case

---

[1] Although a case worker testified that R. C.'s putative father is deceased, the order on appeal found that R. C.'s putative father's identity and whereabouts are unknown.

manager testified that although DFCS had contacted R. C.'s relatives in May, none of them were willing and able to assume care of R. C. at that time.

The mother presented the testimony of another sister, L. C., who testified that she was willing and able to take custody of R. C. even though she previously had told DFCS that she had no stable housing. L. C. testified that she had recently obtained stable housing, living in a house with other family members, but she had not contacted DFCS about the change in circumstance prior to the hearing. L. C. admitted that DFCS had not verified her housing. R. C. testified that his preference was to remain in his current foster placement, but he conceded that he would live with L. C. if he was unable to stay in that placement. Relatedly, R. C.'s court appointed special advocate testified that in her opinion R. C. was thriving at the foster home and recommended that R. C. stay in the care of the foster parent. There was no testimony about R. C.'s living situation with C. C. or with his mother prior to his arrest. C. C. did not appear at the hearing, but she advised DFCS that she was unwilling to resume custody of R. C. due to his behavioral issues.

In September 2024, the juvenile court entered an order of adjudication and provisional disposition, finding R. C. to be a dependent child by clear and convincing

evidence to the extent that he was without a parent, guardian, or legal custodian based on his mother's incarceration and C. C.'s refusal to continue as a caretaker. The juvenile court awarded temporary custody to DFCS and ordered biweekly supervised visitation between R. C. and his mother. The court ordered the mother to provide within ten days the names of possible placements for R. C. and instructed DFCS to conduct a diligent search for available placements. The mother now appeals from the September 2024 order.[2]

1. The mother argues that the juvenile court's order contains multiple findings of fact that are not supported by the record.

Under the most recent version of Georgia's Juvenile Code, the juvenile court may place a minor child in the protective custody of the

---

[2] "An order within a [dependency] proceeding deciding temporary custody of the child is a final order . . . from which a direct appeal lies." *In the Interest of S. B.*, 366 Ga. App. 80, 82 n. 3 (880 SE2d 655) (2022) (citation and punctuation omitted). See also *In the Interest of S. W.*, 363 Ga. App. 666, 668-69 (1) (872 SE2d 316) (2022) (explaining that immediately appealable orders in dependency proceedings include "temporary or interlocutory custody orders"). Although the record on appeal contains subsequent orders entered in this case, those orders are not before us here. Compare *In the Interest of A. E.*, 372 Ga. App. 712, 718-20 (2) (905 SE2d 875) (2024) (addressing argument raised by child's attorney that the father could not pursue the appeal because of subsequent orders entered in the deprivation hearing), citing *In the Interest of T. H.*, 319 Ga. App. 216, 217-20 (735 SE2d 287) (2012) (addressing the issue of mootness of an interim deprivation order).

Department where the State shows, by clear and convincing evidence, that the child is a dependent child. The criteria to be reviewed by the juvenile court are clear. Pursuant to OCGA § 15-11-2 (22), a dependent child is defined as a child who: (A) Has been abused or neglected and is in need of the protection of the court; (B) Has been placed for care or adoption in violation of law; or (C) Is without his or her parent, guardian, or legal custodian. But even after finding a child to be dependent, a juvenile court can only remove a child from a parent's custody if it finds that the dependency resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. And proof of unfitness must be shown by clear and convincing evidence; this standard recognizes the importance of the familial bond and helps eliminate the risk that a factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior.

*In the Interest of T. S.*, 348 Ga. App. 263, 269 (820 SE2d 773) (2018) (citations and punctuation omitted) (citing *In the Interest of S. C. S.*, 336 Ga. App. 236, 244 (784 SE2d 83) (2016)); *In the Interest of J. H.*, 310 Ga. App. 401, 402 (713 SE2d 472) (2011); *In the Interest of C. L. Z.*, 283 Ga. App. 247, 249 (641 SE2d 243) (2007). See also *In the Interest of K. K.*, 364 Ga. App. 82, 83 (874 SE2d 110) (2022).

(a) As an initial matter, we note that "an order entered following a hearing in a dependency proceeding shall include findings of fact. OCGA § 15-11-111 (b) (2). Such findings of fact should be made in accordance with OCGA § 9-11-52 (a), which provides that a court must find the facts specially and *state separately* its conclusions of law." *In the Interest of K. K.*, 364 Ga. App. at 83-84 (emphasis supplied; punctuation omitted) (quoting *In the Interest of B. G.*, 345 Ga. App. 167, 168 (1) (812 SE2d 552) (2018)). In this case, the order contains separate sections for findings of fact and conclusions of law, but the fact section is interspersed with not only legal conclusions, but also orders from the court to the parties.

At least one of the findings is unsupported by evidence in the record — namely, finding four, which states that R. C. was at risk of physical or emotional harm if allowed to remain in the mother's care. R. C.'s testimony was limited to his satisfaction with his foster placement and acquiescence to living with L. C. if he could not remain at the foster placement.[3] However, there is no evidence concerning any current or potential physical or emotional harm. Accordingly, it was error for the juvenile court to make this finding.

---

[3] The mother represented that she visited with R. C. when her sisters could bring him to visit.

7

"[O]rdinarily, findings of fact by trial courts sitting without a jury are binding on appeal. But, where findings of fact are 'clearly erroneous,' or wholly unsupported by the evidence, they may be set aside. And if the court's judgment is based upon a stated fact for which there is no evidence, it should be reversed." *In the Interest of V. G.*, 352 Ga. App. 404, 409 (1) (a) (834 SE2d 901) (2019) (punctuation omitted), quoting *In the Interest of C. R. M.*, 179 Ga. App. 38 (345 SE2d 141) (1986). We do not know whether this erroneous finding played into the court's ultimate determination of dependency or supervision of visitation. Moreover, unappealed findings may be used against a parent in later proceedings. Therefore, we vacate the order as to this finding. See *In the Interest of A. M.*, 306 Ga. App. 358, 364 (5) (702 SE2d 686) (2010) (nonreunification ruling vacated because no evidence supported one of juvenile court's findings and the "erroneous finding was sufficient to have influenced the [juvenile] court's decision to terminate reunification efforts"). Cf. *In the Interest of A. B.*, 346 Ga. App. 2, 8 (1) (b) (815 SE2d 561) (2018) (in a termination proceeding, a parent is bound by unappealed rulings in prior dependency proceedings).

(b) The mother argues that the juvenile court's order improperly made its findings of subject matter and personal jurisdiction without sufficient evidence. See

*Williams v. Dep't of Human Resources*, 150 Ga. App. 610 (1) (258 SE2d 288) (1979) ("A juvenile court is a court of special and limited jurisdiction, and its judgments must show on their face such facts as are necessary to give it jurisdiction of the person and subject matter."). The mother failed to challenge the issue of personal jurisdiction when she initially appeared in the case and therefore has waived this issue. Cf. *Euler-Siac S.P.A. (Creamar Spa) v. Drama Marble Co.*, 274 Ga. App. 252, 255 (1) (617 SE2d 203) (2005) (objection to the exercise of personal jurisdiction may be waived if not raised at the proper time). Moreover, the court cited OCGA § 15-11-1 et seq. in support of its subject matter jurisdiction over the matter, which encompasses the statutory basis for its jurisdiction. See OCGA § 15-11-2(15) ("'Court' means the juvenile court or the court exercising jurisdiction over juvenile matters."); OCGA § 15-11-10(1)(C) ("the juvenile court shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action[ . . . c]oncerning any child who[. . . i]s alleged to be a dependent child[.]"). Accordingly, this argument is without merit.

(c) The mother argues that the juvenile court announced an incorrect standard for making its determination of dependency during the hearing. We agree that the

9

juvenile court's oral pronouncement was not a precise recitation of the appropriate standard. Regardless, this standard was not recited in the written order, which is where this Court looks for the official disposition of the juvenile court. Cf. *In the Interest of T. R.*, 358 Ga. App. 369, 376 (2) n. 3 (855 SE2d 389) (2021) ("oral findings in the transcript are not sufficient to satisfy the requirement for express, written findings of fact and conclusions of law"). See also *In the Interest of R. C. M.*, 284 Ga. App. 791, 798 (III) (1) n. 6 (645 SE2d 363) (2007) (explaining that a juvenile court must determine whether a child is dependent at the time of the hearing rather than in the past). In its order, the court found that the mother was currently incarcerated and that R. C. was without a caretaker. It also found that the mother could not provide adequate care of R. C. because of her incarceration, resulting in her unfitness and in the child's dependency. The order does not state that the dependency was based on the time period around R. C.'s arrest or C. C.'s refusal to continue caring for R. C. Accordingly, this argument is without merit.

(d) The mother also contends that the juvenile court erred by relying on the emergency removal order, which deprived her of her right to confront the DFCS

employee who testified at that time. Again, the dependency order does not contain any findings based on the removal order, so this argument is without merit.

(e) The mother maintains that the juvenile court erred by finding R. C. dependent at the time of the hearing on the basis of her incarceration because L. C. was available to take custody of R. C. We disagree.

The court considered L. C.'s testimony that she was willing and able to be a caregiver for R. C., but she also admitted at the hearing that she initially told DFCS that she did not have stable housing and could not take R. C. Based on this testimony alone, the court was authorized to find that L. C. was not an appropriate caregiver at the time of the hearing without further investigation of her housing by DFCS. See, e.g., *In the Interest of R. D.*, 346 Ga. App. at 259 (1). Cf. OCGA § 15-11-133.1(c) (after an emergency order but prior to a preliminary hearing, the juvenile court may allow a child to remain in the custody of a caregiver under a voluntary agreement with the parent, but such agreement requires a walk-through of the custodian's housing, among other things). Moreover, C. C. refused to serve as a caretaker for R. C., and the mother was still incarcerated at that time and could not take physical custody of R. C.

11

Thus, the only available caregiver was the foster placement via DFCS. See OCGA § 15-11-212.

The State contends that the mother was prohibited from designating a caregiver during the pendency of the case. See OCGA § 19-9-128 (prohibiting the execution of a power of attorney by a parent to another caregiver "for the purpose of subverting an investigation of the child's welfare"). Pretermitting whether the State is correct, the order at issue was temporary, and the court instructed DFCS to work with L. C. and the mother to provide names of other possible placements for R. C. Given the record before us, we discern no error in the juvenile court's refusal to allow L. C. to take immediate custody of R. C.

(f) Finally, the mother contends that the juvenile court erred by finding R. C.'s dependency attributable to her and by removing R. C. from her legal custody without first making a determination of parental unfitness attributable to her. The court, however, explicitly found that the mother's incarceration resulted in her inability to provide care to R. C. resulting in dependency based on parental unfitness. See OCGA § 15-11-2(22)(C). Accordingly, this argument is without merit.

2. The mother next contends that the juvenile court erred by ordering supervised visitation.[4] OCGA § 15-11-112(b) states that "[t]here shall be a presumption that visitation shall be unsupervised unless the court finds that unsupervised visitation is not in a child's best interests." While the mother's present incarceration may require at least some supervision of her visits with anyone, let alone R. C., the order contains no finding that *DFCS supervision* is in R. C.'s best interest. See id. Accordingly, we vacate this portion of the order and remand to the juvenile court to enter appropriate findings regarding whether supervised visitation is in R. C.'s best interest (again, we are not concerned by institutional supervision here). See *In the Interest of J. K.*, 375 Ga. App. 700, 706 (916 SE2d 757) (2025) (remanding for further findings because the juvenile court failed to make explicit findings allowing for meaningful review); *In the Interest of K. K.*, 364 Ga. App. at 85 (same).

---

[4] The State contends that the mother waived this argument, citing *In the Interest of S. P.*, 282 Ga. App. 82, 84 (2) (637 SE2d 802) (2006). That case, however, held that the appellant waived an argument regarding an ex parte meeting between the court and guardian ad litem prior to the hearing and any erroneous evidence admitted therefrom. In this case, the court made an oral pronouncement of supervised visitation prior to entering the required written dependency order. We decline to hold that the mother's failure to affirmatively object prior to an entry of the written order constitutes a waiver of her right to challenge this portion of the order.

3. The mother contends that clear and convincing evidence did not support the juvenile court's determination to remove her as R. C.'s legal custodian.

At the outset, we acknowledge that the record is devoid of evidence that the mother knew or should have known that C. C. would not be an appropriate caregiver for R. C. Rightly, the juvenile court's order did not find R. C. dependent as to the mother based on C. C.'s act of putting R. C. out of her house. And had R. C. not come into DFCS's care based on C. C.'s actions, the mother may have been able to select a new guardian for R. C. without DFCS involvement.

That said, the evidence presented at the hearing — including that the mother was incarcerated and could not take immediate custody of R. C. — supported the juvenile court's finding of parental unfitness on the basis that R. C. was without his parent, who was unable to provide adequate care of him. See OCGA § 15-11-2(22)(C); *In the Interest of T. S.*, 348 Ga. App. at 269 (explaining that custody may be removed if "the dependency resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child *or by what is tantamount to physical . . . incapability to care for the child*"). Compare *In the Interest of K. K.*, 364 Ga. App. at 85 (vacating order and remanding case because

the order contained "no finding whatsoever with regard to parental unfitness"). In light of this, the juvenile court's ultimate decision to give both physical and legal custody of R. C. to DFCS was supported by clear and convincing evidence.

4. Finally, the mother contends that the juvenile court erred by denying her motion to dismiss. We agree with the mother that the court mischaracterized the nature of her argument and misstated the law at times in its oral pronouncement, but for the reasons stated in the previous divisions, there was evidence provided by DFCS upon which the court could make a dependency determination. Therefore, the mother's challenge to the denial of her motion to dismiss is without merit.

Given the sum of our holdings above, the order is vacated as to the specific finding as stated in Division 1 (a) and as to the order that visitation be supervised as stated in Division 2. We remand for the juvenile court to reconsider its ultimate determination of dependency without this erroneous finding of fact and reconsider whether supervised visitation is in R. C.'s best interest, adding any such determination to a new written order consistent with this opinion.

*Judgment vacated and case remanded with direction. Markle and Padgett, JJ., concur.*